## COLONNADE CATERING CORP. *v.* UNITED STATES

No. 108.  Argued January 15, 1970—Decided February 25, 1970

*O. John Rogge* argued the cause for petitioner.  With him on the briefs was *Jerome M. Stember.*

*Jerome M. Feit* argued the cause for the United States. With him on the brief were *Solicitor General Griswold, Assistant Attorney General Wilson, Lawrence G. Wallace,* and *Charles Ruff.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner, a licensee in New York authorized to serve alcoholic beverages and also the holder of a federal retail liquor dealer's occupational tax stamp, 26 U. S. C. § 5121 (a), brought this suit to obtain the return of seized liquor and to suppress it as evidence.  The District Court granted the relief.  The Court of Appeals reversed. 410 F. 2d 197.  The case is here on a petition for writ of certiorari which we granted, 396 U. S. 814, to review the decision in light of *Camara* v. *Municipal Court,* 387 U. S. 523, and *See* v. *City of Seattle,* 387 U. S. 541.

Petitioner runs a catering establishment.  A federal agent, a member of the Alcohol and Tobacco Tax Divi-

sion of the Internal Revenue Service, was a guest at a party on petitioner's premises and noted a possible violation of the federal excise tax law. When federal agents later visited the place, another party was in progress. They noticed that liquor was being served. Without the manager's consent, they inspected the cellar. Then they asked the manager to open the locked liquor storeroom. He said that the only person authorized to open that room was one Rozzo, petitioner's president, who was not on the premises. Later Rozzo arrived and refused to open the storeroom. He asked if the agents had a search warrant and they answered that they did not need one. When Rozzo continued to refuse to unlock the room, an agent broke the lock and entered. Then they removed the bottles of liquor now in controversy which they apparently suspected of being refilled contrary to the command of 26 U. S. C. § 5301 (c).

It is provided in 26 U. S. C. § 5146 (b)[1] and in 26 U. S. C. § 7606[2] that the Secretary of the Treasury or

---

[1] 26 U. S. C. § 5146 (b) provides:

"The Secretary or his delegate may enter during business hours the premises (including places of storage) of any dealer for the purpose of inspecting or examining any records or other documents required to be kept by such dealer under this chapter or regulations issued pursuant thereto and any distilled spirits, wines, or beer kept or stored by such dealer on such premises."

[2] 26 U. S. C. § 7606 provides:

"(a) Entry during day.

"The Secretary or his delegate may enter, in the daytime, any building or place where any articles or objects subject to tax are made, produced, or kept, so far as it may be necessary for the purpose of examining said articles or objects.

"(b) Entry at night.

"When such premises are open at night, the Secretary or his delegate may enter them while so open, in the performance of his official duties."

his delegate has broad authority to enter and inspect the premises of retail dealers in liquors.[3]   And in case of the refusal of a dealer to permit the inspection, it is provided in 26 U. S. C. § 7342:

"Any owner of any building or place, or person having the agency or superintendence of the same, who refuses to admit any officer or employee of the Treasury Department acting under the authority of section 7606 (relating to entry of premises for examination of taxable articles) or refuses to permit him to examine such article or articles, shall, for every such refusal, forfeit $500."

The question is whether the imposition of a fine for refusal to permit entry—with the attendant consequences that violation of inspection laws may have in this closely regulated industry—is under this statutory scheme the exclusive sanction, absent a warrant to break and enter.

In *Frank* v. *Maryland,* 359 U. S. 360, 366–367, a case involving an inspection under a municipal code, we said:

"[The] inspector has no power to force entry and did not attempt it.   A fine is imposed for resistance, but officials are not authorized to break past the unwilling occupant."

*Frank* v. *Maryland* was overruled in *Camara* v. *Municipal Court, supra,* insofar as it permitted warrantless searches or inspections under municipal fire, health, and housing codes.   The dictum that the provision for a fine on refusal to allow inspection made the use of force improper when there was no warrant was not disturbed; and the question is whether that dictum contains the controlling principle [4] for this case.

---

[3] As defined in 26 U. S. C. § 5122 (a).

[4] And see *United States* v. *Frisch,* 140 F. 2d 660, 662.

The Government, emphasizing that the Fourth Amendment bans only "unreasonable searches and seizures," [5] relies heavily on the long history of the regulation of the liquor industry during pre-Fourth Amendment days, first in England and later in the American Colonies. It is pointed out, for example, that in 1660 the precursor of modern-day liquor legislation was enacted in England [6] which allowed commissioners to enter, on demand, brewing houses at all times for inspection. Massachusetts had a similar law in 1692. [7] And in 1791, the year in which the Fourth Amendment was ratified, Congress imposed an excise tax on imported distilled spirits and on liquor distilled here, [8] under which law federal officers had broad powers to inspect distilling premises and the premises of the importer [9] without a warrant. From these and later laws and regulations governing the liquor industry, it is argued that Congress has been most solicitous in protecting the revenue against various types of fraud and to that end has repeatedly granted federal agents power to make warrantless searches and seizures of articles under the liquor laws.

---

[5] The Fourth Amendment reads as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[6] 12 Car. 2, c. 23, § 19.

[7] Act of June 24, 1692, Mass. Acts and Resolves, Vol. 1, 1692–1714, p. 33, c. 5, § 8.

[8] Act of March 3, 1791, 1 Stat. 199.

[9] Section 29 of the Act of March 3, 1791, 1 Stat. 206, provided:

"That it shall be lawful for the officers of inspection of each survey at all times in the daytime, upon request, to enter into all and every the houses, store-houses, ware-houses, buildings and places which shall have been [registered] in manner aforesaid, and by tasting, gauging or otherwise, to take an account of the quantity, kinds and proofs of the said spirits therein contained; and also to take samples thereof, paying for the same the usual price."

The Court recognized the special treatment of inspection laws of this kind in *Boyd* v. *United States,* 116 U. S. 616, 624:

> "[I]n the case of excisable or dutiable articles, the government has an interest in them for the payment of the duties thereon, and until such duties are paid has a right to keep them under observation, or to pursue and drag them from concealment."

And it added:

> "The seizure of stolen goods is authorized by the common law; and the seizure of goods forfeited for a breach of the revenue laws, or concealed to avoid the duties payable on them, has been authorized by English statutes for at least two centuries past; and the like seizures have been authorized by our own revenue acts from the commencement of the government. The first statute passed by Congress to regulate the collection of duties, the act of July 31, 1789, 1 Stat. 29, 43, contains provisions to this effect. As this act was passed by the same Congress which proposed for adoption the original amendments to the Constitution, it is clear that the members of that body did not regard searches and seizures of this kind as 'unreasonable,' and they are not embraced within the prohibition of the amendment." *Id.,* at 623.

We agree that Congress has broad power to design such powers of inspection under the liquor laws as it deems necessary to meet the evils at hand. The general rule laid down in *See* v. *City of Seattle, supra,* at 545— "that administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure"—is therefore not applicable here. In *See,*

we reserved decision on the problems of "licensing programs" requiring inspection, saying they can be resolved "on a case-by-case basis under the general Fourth Amendment standard of reasonableness." *Id.*, at 546.

Where Congress has authorized inspection but made no rules governing the procedure that inspectors must follow, the Fourth Amendment and its various restrictive rules apply. We said in the *See* case:

> "The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property. The businessman, too, has that right placed in jeopardy if the decision to enter and inspect for violation of regulatory laws can be made and enforced by the inspector in the field without official authority evidenced by a warrant." *Id.*, at 543.

What was said in *See* reflects this Nation's traditions that are strongly opposed to using force without definite authority to break down doors. We deal here with the liquor industry long subject to close supervision and inspection. As respects that industry, and its various branches including retailers, Congress has broad authority to fashion standards of reasonableness for searches and seizures. Under the existing statutes, Congress selected a standard that does not include forcible entries without a warrant. It resolved the issue, not by authorizing forcible, warrantless entries, but by making it an offense for a licensee to refuse admission to the inspector.

*Reversed.*

Mr. Chief Justice Burger, with whom Mr. Justice Black and Mr. Justice Stewart join, dissenting.

I join in the dissenting opinion of Mr. Justice Black; however, since my position goes somewhat beyond his discussion I add my views separately.

I assume we could all agree that the search in question must be held valid, and the contraband discovered subject to seizure and forfeiture, unless (a) it is "unreasonable" under the Constitution or (b) it is prohibited by a statute imposing restraints apart from those in the Constitution. The majority sees no constitutional violation; I agree.

The controlling statutes set out in notes 1 and 2 of the majority opinion affirmatively define the conditions and times when agents may enter premises and inspect. Under 26 U. S. C. § 5146 (b) agents may enter to inspect "any distilled spirits, wines, or beer kept or stored by such dealer on such premises." The time when this may be done is fixed as "during business hours." Section 7606 of 26 U. S. C., set forth in note 2 of the majority opinion, provides that agents may enter any building where taxable articles are kept, "so far as it may be necessary for the purpose of examining said articles or objects."

The government agents needed neither a warrant nor these statutes to secure entry to this place of business since it was as open as any business establishment that seeks to sell goods and services to the public. The agents need to rely on the statutes only to carry out their duty to inspect after accomplishing entry. This was recognized implicitly by Congress in limiting the inspection to "business hours" and daytime. Congress went beyond mere entry; it provided for *inspection*. Inspection authorization would be meaningless if the agents could not open lockers, cabinets, closets, and storerooms and indeed pry open cases of liquor to see the contents.

Surely Congress was not unaware that purveyors of liquor do not leave their wares or stores or reserve supplies lying casually about; on the contrary they keep supplies under lock in various ways, including lockers, cabinets, closets, or storerooms; this practice is so universal it can be judicially noticed.

Here the agents acted explicitly under statutes containing the language "so far as it may be necessary"; this is simple and clear and for me it is plainly broad enough to permit inspection of all spirits "kept or stored . . . on such premises" whether in lockers, cabinets, closets, or storerooms. Congress having prescribed this as a reasonable means of enforcing the inspection necessary to tax collection, I see no basis for any court to say it cannot be done.

That Congress provided an added penalty for those who refuse access for inspection is irrelevant. We can assume this was to encourage licensed purveyors to comply promptly to facilitate inspections. The majority views the $500 fine as the Government's exclusive remedy for the non-cooperation of the taxpayer. Congress could hardly be so naive as to give to the licensee the option to choose between the risk of a $500 fine against the certain discovery, if he is in violation, of a large store of liquor subject to forfeiture. At current prices $500 would represent four or five cases of spirits. The alternative of securing a warrant touches on the constitutional issues which the majority does not rely on. We should note, of course, that the majority holding eliminates any basis for a forfeiture of the contraband liquor and leaves the Government to another lawsuit to collect a $500 fine.

With deference I submit the majority has needlessly complicated a relatively simple issue of statutory construction with undertones of constitutionally limited searches. The words "so far as it may be necessary" are quite plain and we all agree no issue of constitutional dimensions is presented.

MR. JUSTICE BLACK, with whom THE CHIEF JUSTICE and MR. JUSTICE STEWART join, dissenting.

Petitioner brought proceedings under the Federal Rules of Criminal Procedure for the return of liquor seized by federal agents. One of those rules provides that "[a]

person aggrieved by an *unlawful* search and seizure may move the district court . . . for the return of the property . . . so obtained on the ground that (1) the property was *illegally* seized without warrant . . . ." Fed. Rule Crim. Proc. 41 (e). (Emphasis added.) As I read that provision, it requires petitioner to show that the seizure in this case was illegal, either because it violated the Fourth Amendment, or because it was in violation of some law passed by Congress. In my opinion neither requirement has been met and therefore petitioner is not entitled to a return of the seized liquor.

There can be no doubt that places that sell liquor to the public have historically been subjected to strict governmental scrutiny for many centuries both in this country and in England. The Court sets out a little of the history of that regulation in its opinion. I therefore agree that there is nothing unreasonable, as that term is used in the Fourth Amendment, in permitting officers to go into an establishment that provides alcoholic beverages to the public, and upon finding something that indicates a flagrant violation of the law to pursue their examination to see whether a violation is actually occurring. The officers did just that in this case, and I see no reason on earth why any man should hold that conduct unreasonable. This Court certainly should not prevent faithful officers, when they see the law being violated practically before their very eyes, from taking the steps necessary to stop and prove that violation.

The majority, far from finding this search unreasonable and therefore illegal under the Fourth Amendment, holds only that it was not authorized by 26 U. S. C. §§ 5146 (b), 7606 (a),[1] and that therefore the liquor must be returned. While these statutes do not in express terms authorize forcible breaking and entering to seize liquor kept in

---

[1] Set forth *ante,* at 73 nn. 1, 2.

violation of federal law, it is perfectly clear that they do not in express terms declare such seizure illegal, and in my opinion those provisions impliedly authorize exactly the type of official conduct involved here. I am confident that when Congress said that federal liquor agents could search without a warrant and further provided for fines if the owner refused to permit such a search,[2] it also intended to authorize forcible entry and seizure if that became necessary. I do not think Congress needed to speak any more clearly than it already has. Since I cannot conclude that this search and seizure was illegal under either the Fourth Amendment or any Act of Congress, but was to the contrary carried out pursuant to congressional authorization, I would affirm the judgment below and hold that petitioner was not entitled to a return of the liquor.

---

[2] 26 U. S. C. § 7342, *ante,* at 74.