**Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,**

v.

**NOLICHUCKEY SAND COMPANY, INC., Defendant-Appellant.**

No. 79–1111.

United States Court of Appeals, Sixth Circuit.

Argued June 22, 1979.

Decided Oct. 5, 1979.

C. Berkeley Bell, Bell & Rogers, Herbert R. Silvers, Silvers, Randall & Laughlin, Greeneville, Tenn., for defendant-appellant.

Thomas A. Mascolino, Carin Ann Claus, Morell Mullins, Ronald E. Meisburg, Dept. of Labor, Washington, D. C., John H. Cary, U. S. Atty., Richard K. Harris, Asst. U. S. Atty., Knoxville, Tenn., for plaintiff-appellee.

Before EDWARDS, Chief Judge, and CELEBREZZE and LIVELY, Circuit Judges.

LIVELY, Circuit Judge.

The question for decision in this case: May an inspector of the Mine Safety & Health Administration enter the premises of a sand and gravel operation to make a routine inspection without a search warrant? The district court held that no warrant was required and enjoined the defendant from refusing to permit inspection of its premises by authorized representatives of the plaintiff.

The case was submitted to the district court on a stipulation and the testimony of a single witness—the supervisor of the in-

spector who was refused entry by the defendant. This witness was called by the defendant. The plaintiff offered no evidence, relying on the terms of a statute, the Federal Mine Safety and Health Amendments Act of 1977[1] (the Act or the 1977 Amendments Act) and its legislative history.

There is no description or picture of the sand and gravel operation of the defendant in the record. It appears, however, that it is a typical rock quarry or gravel pit where work is done on the surface of the land, with no underground tunnels or shafts. Nevertheless, the parties stipulated that the operation of the defendant is subject to the Act, which refers to "coal or other mine." Included in the definition of "coal or other mine" is "an area of land from which minerals are extracted in nonliquid form . . . ." 30 U.S.C.A. § 802(h)(1)(A) (1979 pocket part). The issue, then, is whether the provisions of the Act which permit warrantless routine inspections of such "mines" offend the Fourth Amendment to the Constitution.

Since the decision of the Supreme Court in *See v. Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), it has been settled that the Fourth Amendment warrant requirement does apply generally to code-enforcement inspections of commercial structures. However, the Supreme Court has subsequently identified two exceptions to the general requirement of a warrant. In *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), the Court held that an establishment licensed to sell liquor could be searched by an inspector without a warrant. Noting the long history of government regulation of the liquor industry, the Court held that Congress has broad authority to determine standards of reasonableness for searches and seizures related to enforcement of such regulations. The Court later held that a treasury agent may make a warrantless search of premises of a licensed gun dealer. *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972). While

regulation of firearms does not have the long history applicable to the liquor industry, the Court found that close scrutiny of interstate traffic of firearms "is undeniably of central importance to federal efforts to prevent violent crime and to assist the States in regulating the firearms traffic within their borders." 406 U.S. at 315, 92 S.Ct. at 1596.

The two exceptions identified by the Court relate to particular industries—those with a long history of close regulation and those which are currently regulated in order to discharge an overriding responsibility of government. In the case of both exceptions the key element appears to have been the reasonableness of the congressional determination that warrantless searches or inspections should be permitted. "It is also apparent that if the law is to be properly enforced and inspection made effective, inspections without warrant must be deemed reasonable official conduct under the Fourth Amendment." *Biswell, supra*, 406 U.S. at 316, 92 S.Ct. at 1596. This would appear to be the proper test, since the Fourth Amendment prohibits only those searches which are unreasonable.

The Supreme Court made it clear in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), that the warrant requirement applies except where Congress has responded to "relatively unique circumstances" in providing otherwise. 436 U.S. at 313, 98 S.Ct. at 1821. One who embarks upon an enterprise in an industry which has a history of close regulation, supervision and inspection has no reasonable expectation of privacy which would preclude warrantless inspections. "The businessman in a regulated industry in effect consents to the restrictions placed upon him." *Id.*, quoting from *Almeida-Sanchez v. United States*, 413 U.S. 266, 271, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973).

The appellant argues that its business does not fall within an exception to the warrant requirement because the sand and gravel industry has no long history of

---

1. Pub.L. 95–164, 91 Stat. 1290, to be codified as 30 U.S.C. § 801 et seq.

government regulation, no license is required and it has never been "pervasively" regulated. Thus, the appellant contends, it was unreasonable for Congress to provide for warrantless inspections of its operations.

The sand and gravel industry first came under federal regulation with passage of the Federal Metal and Nonmetallic Mine Safety Act [2] (the Metal Act or the 1966 Act) in 1966. The 1966 Act was repealed and a number of its provisions were included in the 1977 amendments to the Federal Coal Mine Health and Safety Act of 1969. One of the amendments changed the definition of the word "mine" to include other mines as well as coal mines. The effect of the 1977 amendments was to bring other mineral extraction industries under the regulatory framework originally made applicable only to coal mining. At least with respect to health and safety measures all mining is now pervasively regulated. This is clear from the face of the 1977 Amendments Act and from its legislative history. See also, 30 C.F.R., Chapter 1.

The 1977 Amendments Act repeats the congressional findings and declaration of purpose found in the 1969 Coal Mine Act, adding "or other" where that Act referred only to coal mining:

Congress declares that—

(a) the first priority and concern of all in the coal or other mining industry must be the health and safety of its most precious resource—the miner;

(b) deaths and serious injuries from unsafe and unhealthful conditions and practices in the coal or other mines cause grief and suffering to the miners and to their families;

(c) there is an urgent need to provide more effective means and measures for improving the working conditions and practices in the Nation's coal or other mines in order to prevent death and serious physical harm, and in order to prevent occupational diseases originating in such mines;

(d) the existence of unsafe and unhealthful conditions and practices in the Nation's coal or other mines is a serious impediment to the future growth of the coal or other mining industry and cannot be tolerated;

(e) the operators of such mines with the assistance of the miners have the primary responsibility to prevent the existence of such conditions and practices in such mines;

(f) the disruption of production and the loss of income to operators and miners as a result of coal or other mine accidents or occupationally caused diseases unduly impedes and burdens commerce;

\*　　\*　　\*　　\*　　\*　　\*

30 U.S.C.A. § 801 (1979 pocket part).

These findings echo the historical statement of long recognition by Congress of "the hazards involved in mining coal and other minerals" and efforts to reduce these hazards beginning with the establishment of the Bureau of Mines in the Department of Interior in 1910. See S.Rep.No. 95–181, 95th Cong. 1st Sess., reprinted in 1977 U.S. Code Cong. and Admin.News, p. 3401. Congress concluded from its study of statistics concerning fatal and disabling injuries in coal and other mines that new legislation was required. Specifically, it determined that "the Metal Act does not provide effective protection for miners from health and safety hazards and enforcement sanctions under that Act are insufficient to encourage compliance by operators." *Id.* at 3408.

The sand and gravel industry does not have the long history of regulation referred to in *Colonnade* or the extensive licensing scheme which was present in both *Colonnade* and *Biswell*. Nevertheless, as Congress found, all miners are exposed to unusually severe health and safety hazards. We believe it was reasonable to bring all mineral extraction businesses and operations under a single regulatory act. This is especially true for sand and gravel operations in light of statistics before Congress in

---

**2.** Pub.L. 89–577, 80 Stat. 772, 30 U.S.C. § 721 et seq. (1976).

1966 which "conclusively show that the sand and gravel industry is the most hazardous except for the underground coal and mineral mining industries." S.Rep.No. 1296, 89th Cong. 2d Sess., reprinted in 1966 U.S.Code Cong. and Admin.News, pp. 2846, 2851.

Section 201 of the 1977 Amendments Act[3] requires frequent inspections of coal or other mines, with a minimum of four complete inspections of each underground coal mine and two inspections of each surface coal or other mine each year. The purposes of these inspections by representatives of the Secretary of Labor are to determine whether an imminent danger exists and whether there is compliance with mandatory health or safety standards and with any citation or order previously issued. The statute directs that no advance notice of an inspection for these purposes shall be provided to anyone. Though there is no reference to search warrants in the language of the Act, the Senate Report states, "This is intended to be an absolute right of entry without need to obtain a warrant." 1977 U.S.Code Cong. and Admin.News, p. 3427.

In *Barlow's, supra,* the Supreme Court invalidated a provision for warrantless inspections contained in the Occupational Safety and Health Act of 1970 (OSHA). Such inspections were not limited to a single industry or occupation; they covered every business and industry affecting interstate commerce. Approval of warrantless inspections in such an "across the board" manner would have eviscerated the holding in *See v. Seattle* and would have turned the exception into the rule. However, we find nothing in *Barlow's* which requires a holding that only licensed businesses such as dealers in liquor and guns may be excepted from the requirement of a warrant. On the contrary, Justice White made it clear that requiring a warrant for OSHA inspection does not doom warrantless search provisions

in other regulatory statutes. "The reasonableness of a warrantless search, however, will depend upon the specific enforcement needs and privacy guarantees of each statute." 436 U.S. at 321, 98 S.Ct. at 1825. The enforcement provisions of the Metal Act,[4] carried over to and included in the 1977 Amendments Act,[5] were cited as an example of procedures for judicial resolution of a dispute when entry is refused. *Id.* at 321–22 n.18, 98 S.Ct. at 1825 n.18.

We conclude that the enforcement needs in the mining industry make a provision for warrantless inspections reasonable. The Act also contains privacy guarantees which are sufficient. As construed by this court, Section 201(a) and (b)[6] of the Act permits warrantless inspections only of the "active workings" of coal mines. A warrant is required for the inspection of offices and other areas where the operator has a general expectation of privacy. See *United States v. Consolidation Coal Co.,* 560 F.2d 214, 217 (6th Cir. 1977), *vacated and remanded,* 436 U.S. 942, 98 S.Ct. 2841, 56 L.Ed.2d 783 (1978), *judgment reinstated,* 579 F.2d 1011 (1978). The same limitation would apply to sand and gravel "mines." Further, the statute provides for participation in all inspections by a representative of the operator.[7] Finally, refusal of an operator to permit an inspection does not lead to summary imposition of sanctions. The Act provides for institution of a civil action by the Secretary of Labor seeking an injunction or other appropriate order.[8]

In concluding that a warrant is not required for periodic inspection of the "active workings" of sand and gravel "mines," we have considered several district court decisions which have reached the opposite conclusion. *E. g., Marshall v. Douglas, etc. Lime & Stone Co.,* (E.D.Wis., No. 79–C–114, 1979); *Valley Transit Mix, Inc. v. Marshall,* —— F.Supp. —— (D.N.M.No. 79–391–B,

---

**3.** 30 U.S.C.A. § 813 (1979 pocket part).

**4.** 30 U.S.C. § 733(a) (1976).

**5.** 30 U.S.C.A. § 818 (1979 pocket part).

**6.** 30 U.S.C.A. § 813(a) and (b) (1979 pocket part).

**7.** 30 U.S.C.A. § 813(f) (1979 pocket part).

**8.** 30 U.S.C.A. § 818 (1979 pocket part).

1979); *Marshall v. Halquist Stone Co.* (E.D. Wis., No. 78–C–463, 1978). We believe the decision of the Third Circuit in *Marshall v. Stoudt's Ferry Preparation Co.*, 602 F.2d 589 (1979), is better reasoned.

The judgment of the district court is affirmed.