F. Ray MARSHALL, Secretary of Labor, U. S. Department of Labor, Plaintiff-Appellee,

v.

The TEXOLINE COMPANY, a corporation, trading and doing business as the Texoline Company, Texoline Quarry, Defendant-Appellant.

No. 79–2373

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Feb. 28, 1980.

Frank D. McCown, Fort Worth, Tex., Jerry D. O'Neal, Weatherford, Tex., for defendant-appellant.

Frederick W. Moncrief, U. S. Dept. of Labor, Ronald Meisburg, Atty., Arlington, Va., for plaintiff-appellee.

Before BROWN, TJOFLAT and FRANK M. JOHNSON, Jr., Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

This appeal from a grant of a motion for summary judgment involves the right of the Secretary of Labor to conduct a health and safety inspection at Texoline Company's gravel pit mine without a warrant. We affirm the order of the district court permitting the Secretary of Labor to do so.

In August, 1977, a federal mine inspector attempted to inspect Texoline's facility but was denied entry. The Secretary

* Fed.R.App.P. 34(a), 5th Cir. R. 18.

**936**

of the Interior sought an injunction, under the Federal Metal and Nonmetallic Mine Safety Act [Metal Act],[1] to prohibit Texoline from refusing the inspection. In October, 1978, the Secretary of Labor was substituted as plaintiff when the Metal Act was repealed and those industries formerly regulated by the Metal Act were brought under the Coal Mine Health and Safety Act [Mine Safety Act],[2] which is administered by the Secretary of Labor.[3] Warrantless searches are permitted under the Mine Safety Act.[4] If a Mine Safety Act inspection is attempted and entry to the facility is denied, the Secretary of Labor can seek an injunction under the Act.[5]

The district court found that the facility operated by Texoline was a "mine" within the scope of Section 102(b) of the Mine Safety Act, 30 U.S.C.A. § 802(h)(1). It also held that Texoline's operation was an industry affecting interstate commerce, thereby falling within the Act's jurisdiction. Finally, it found that warrantless entry provisions of the statute are constitutional. The court therefore granted the Secretary's request for an injunction. The sole issue on

appeal is the constitutional challenge to the warrantless search provisions of the Mine Safety Act.

Texoline relies on the Supreme Court's decision in *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), to support the contention that the Secretary of Labor is required to obtain a search warrant before he is entitled to enter and inspect Texoline's premises. It contends that the statutory section allowing warrantless searches violates the Fourth Amendment. We agree with the Third and Sixth Circuits in holding that *Barlow's* does not render unconstitutional the Mine Safety Act's inspection provision. *See Marshall v. Nolichuckey Sand Co., Inc.,* 606 F.2d 693 (6th Cir. 1979); *Marshall v. Stoudt's Ferry Preparation Co.,* 602 F.2d 589 (3d Cir. 1979).

In *Barlow's,* the Court invalidated Section 8(a) of the Occupational Safety and Health Act of 1970 [OSHA],[6] which authorizes the Secretary of Labor to search without a warrant the work area of an employment facility involved in interstate commerce. While requiring OSHA to seek war-

1. 30 U.S.C. § 721, *et seq.,* (1976 ed.) (repealed).

2. 30 U.S.C. § 801, *et seq.,* (1971 & Supp. I 1977).

3. Among other things, the Federal Mine Safety and Health Amendments Act of 1977, Pub. L.No. 95–164, 91 Stat. 1290 repealed the Metal Act and amended the Mine Safety Act to expand its coverage to coal *or other* mines, including those previously covered by the Metal Act.

4. Section 201 of the Act, 30 U.S.C. § 813, provides in relevant part:
   "(a) Authorized representatives of the Secretary [of Labor] . . . shall make frequent inspections and investigations in coal or other mines each year for the purpose of (1) obtaining, utilizing, and disseminating information relating to health and safety conditions, the causes of accidents, and the causes of diseases and physical impairments originating in such mines, (2) gathering information with respect to mandatory health or safety standards, (3) determining whether an imminent danger exists, and (4) determining whether there is compliance with the mandatory health or safety standards, or with any citation, order, or decision issued under this subchapter or other requirements of this

chapter. In carrying out the requirements of this subsection, no advance notice of an inspection shall be provided to any person . . . . In carrying out the requirements of clauses (3) and (4) of this subsection, the Secretary shall make inspections of each underground coal or other mine in its entirety at least four times a year, and of each surface coal or other mine in its entirety at least two times a year. . . . For the purpose of making any inspection or investigation under this chapter, the Secretary . . . shall have a right of entry to, upon, or through any coal or other mine."

5. 30 U.S.C. § 818 reads in relevant part:
   "(a)(1) [t]he Secretary may institute a civil action for relief, including a permanent or temporary injunction, restraining order, or any other appropriate order in the district court of the United States . . . whenever [the] operator or his agent— . . . (C) refuses to admit [an authorized] representatives to the coal or other mine, [or] (D) refuses to permit the inspection of the coal or other mine, or the investigation of an accident or occupational disease occurring in, or connected with, such mine . . . ."

6. 29 U.S.C. § 657(a).

rants before inspecting the businesses under its jurisdiction, the Court expressly recognized that a statute may validly authorize the search of certain commercial properties without a warrant. *But, cf. Marshall v. Gibson's Products, Inc. of Plano*, 584 F.2d 668 (5th Cir. 1978) (under OSHA a federal court has no jurisdiction in a suit by the Secretary of Labor to enjoin an employer to submit to an inspection of its premises). As exceptions to the warrant requirement, the Court cited enterprises where businessmen would have no reasonable expectation of privacy. These included certain pervasively regulated industries, typified by *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (firearms), and those closely regulated businesses having a long history of governmental inspection and supervision, typified by *Colonnade Catering Corporation v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1972) (liquor). Proprietors in these types of businesses consent to these restrictions by choosing to accept the benefits of their trade. 436 U.S. at 313, 98 S.Ct. at 1820. Other than falling within these exceptions, the reasonableness of the warrantless search will depend on the specific enforcement needs and privacy guarantees of the particular statute under review. *Id.* at 321, 98 S.Ct. at 1825.

Texoline argues that its business does not fall within an exception to the warrant requirement because the gravel industry has no long history of governmental regulation, it is not "pervasively" regulated, and no license is required. Texoline maintains that it was therefore unreasonable for Congress to provide for warrantless inspections of its operation, especially since there is no greater need to regulate mines under the Mine Safety Act than to regulate the industries under OSHA's jurisdiction. Furthermore, it contends that, even if coal mines have a history of governmental regulation, that history is not applicable to the gravel industry. We find nothing in *Barlow's*, however, that limits exceptions to the warrant requirement to licensed businesses such as dealers in liquor and guns. On the contrary, we should examine the specific enforcement needs and privacy guarantees of the Mine Safety Act.

The Mine Safety Act requires frequent inspections of coal or other mines, with a minimum of four complete inspections of the mines each year. *See* note 4, *supra*. The purposes of these inspections are to determine whether an imminent danger exists and whether the company is complying with mandatory health or safety standards. The statute directs that no advance warning is to be given when such an inspection is made. There are a number of significant differences between this inspection scheme and the one under OSHA. OSHA applies to nearly all businesses engaged in interstate commerce. It authorizes the Secretary to enter any establishment where work is being performed by an employee and to inspect all conditions, structures, equipment and materials. *See* 29 C.F.R. § 1903.3 (1978). By contrast, the Mine Safety Act is aimed at a single industry with an acknowledged history of hazardous working conditions and serious accidents. Moreover, the inspection provisions of the Mine Safety Act are more limited than those of OSHA. They mandate periodic inspections and place limitations on the purposes for which searches may be made. They also limit the situations in which no notice is required. Thus, the provisions are more narrowly drawn than the comparable OSHA provision and there is less likelihood of the abuses of "unbridled discretion upon executive and administrative officers" that the Court in *Barlow's* found objectionable. 436 U.S. at 323, 98 S.Ct. at 1825–1826. *See Marshall v. Nolichuckey, supra*, at pp. 695–696; *Marshall v. Stoudt's Ferry*, 602 F.2d at 594.

Another significant difference between the statutes is that the Mine Safety Act provides for immediate judicial review when entry is refused. The Secretary is authorized to seek an injunction in the district court if he is refused entry. *See* note 5, *supra*. This provision protects privacy guarantees because reasonable accommodation of any unusual privacy expectations may be fully explored in that proceeding. *See Marshall v. Stoudt's Ferry Preparation*

*Co.,* 602 F.2d at 594 (court imposed a confidentiality requirement on the inspectors to protect the appellant's trade secrets). Indeed, *Barlow's* cited the Metal Act's provision for immediate judicial review (a provision that was later included in the Mine Safety Act) as an example of a regulatory statute that was distinguishable from OSHA and that may not be rendered constitutionally infirm by its holding. 436 U.S. at 321–22, n. 18, 98 S.Ct. at 1825, n. 18.

Finally, coal mining has a history of governmental regulation by both state governments and the federal government. *See Marshall v. Stoudt's Ferry,* 602 F.2d at 593. In *Youghiogheny and Ohio Coal Co. v. Morton,* 364 F.Supp. 45 (S.D.Ohio 1973), a three-judge panel concluded that the coal industry, like firearms and liquor, had been pervasively regulated and that warrantless searches, in the context of mine safety investigations, were reasonable.[7] The Senate Committee, in recommending the present Act, noted its approval of the *Youghiogheny* case. It indicated that the opinion reflected congressional intent concerning the constitutionality of warrantless inspections of coal mines. The Committee commented that advance notice of inspections would seriously undercut the Act's objectives because it would allow safety and health hazards to be concealed. S.Rep.No. 181, 95th Cong., 1st Sess., 27, *reprinted in* [1977] U.S. Code Cong. & Admin.News, pp. 3401, 3427. Although the sand and gravel industry does not have the long history of regulation found in the coal mining industry, Congress clearly found that sand and gravel excavations could be almost as dangerous as underground coal mines and consequently in need of similar supervision. U.S.Code Cong. & Admin.News, p. 2851 (1966). Because Congress found that all miners are exposed to unusually severe health and safety hazards, all mining is now pervasively regulated, at least with respect to health and safety measures.

■ We conclude that the Mine Safety Act's enforcement scheme justifies war-

rantless inspections and its restrictions on search discretion satisfy the reasonableness standard outlined in *Barlow's.* Congress had the power to conclude, and was reasonable in concluding, that safety concerns and enforcement needs justify limited warrantless inspections of mines such as Texoline's. Accordingly, we AFFIRM the ruling of the district court.

---

7. Although *Youghiogheny* predated *Barlow's,* we believe its reasoning is still valid.