Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

HALQUIST STONE COMPANY, INC., t/a/d/b/a Halquist Stone Company, Inc., Lannon Quarry and Mill, Defendants.

Civ. A. No. 78–C–463.

United States District Court, E. D. Wisconsin.

April 28, 1981.

·Joseph P. Stadtmueller, U. S. Atty., by William E. Callahan, Jr., Asst. U. S. Atty., Milwaukee, Wis., and Thomas A. Mascolino, Counsel, and Frederick W. Moncrief, Trial Atty., U. S. Dept. of Labor, Arlington, Va., for plaintiff.

Stephen C. Raymonds, Kraemer & Binzak, S. C., Menomonee Falls, Wis., for defendants.

DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action brought by the Secretary of Labor under the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 801 et seq., to permanently enjoin the defendant Halquist Stone Company, Inc. ("Halquist") from refusing to permit warrantless inspections of its stone and gravel quarry in Waukesha County, Wisconsin. See 30 U.S.C. § 818(a)(1). The action is before the court on the Secretary's motion for summary judgment, which motion will be granted.

The Federal Mine Safety and Health Act of 1977 is a successor statute to the Federal Coal Mine Health and Safety Act of 1969, formerly 30 U.S.C. § 801 et seq., and it also incorporates the subject matter of the former 1966 Federal Metal and Nonmetallic Mine Safety Act, formerly 30 U.S.C. § 721 et seq. There is no dispute in this case that the Act includes stone and gravel quarries within its definition of mines, see 30 U.S.C. § 802(h)(1); 1966 U.S.Code Congressional and Administrative News at pages 2851–2852, 2870, and 2874, nor is it disputed that

the Act authorizes warrantless inspections of mines for the purpose of determining if the mines are in compliance with mandatory health and safety standards and if any imminent dangers to the safety of the miners exist. 30 U.S.C. § 813; 1977 U.S.Code Congressional and Administrative News at page 3427.

The defendant challenges the warrantless inspection provision of the Act on Fourth Amendment grounds. It argues that in contrast to underground mines and coal mines in particular, stone and gravel quarries are not a pervasively regulated industry and therefore do not fall within the exception to the warrant requirement of the Fourth Amendment established by the Supreme Court for such industries, see *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970); *United States v. Biswell,* 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), making the warrantless inspection provision of the Act unconstitutional. See *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978).

■ A threshold issue is whether or not an actual case or controversy between the parties exists. On May 31, 1978, Walter Brey, a federal mine inspector, arrived at the defendant quarry for a health and safety inspection. He was allowed to perform the inspection and was also allowed in when he returned the following day. After Brey had been at the quarry for several hours on June 1, however, the owner Albin Halquist arrived and told Brey that he was harassing the employees. Brey contends that Halquist also told him to leave and not return without a warrant. Halquist has filed an affidavit stating that he did not tell Brey to leave and said nothing about a warrant.*

The dispute is of minor significance since the defendant has taken the position that it will not allow future inspections of the quarry without a warrant, see page 37 of Exhibit 1 to defendant's brief filed June 23, 1980, and 30 U.S.C. § 813(a) requires a twice yearly health and safety inspection of each surface mine. Since both parties seek injunctive relief with regard to the inspections, an actual dispute does exist between them. In addition, following the June 1, 1978, incident, Brey issued a citation to the defendant which was heard before an administrative law judge. See 30 U.S.C. §§ 814 and 815. Defendant raised as a defense at the hearing his claim that Brey had not been ordered to leave and that the issue of a warrant had not arisen. That issue was determined adversely to the defendant by the judge. The administrative findings are appealable to the United States courts of appeals and findings of fact, "if supported by substantial evidence on the record considered as a whole, shall be conclusive." 30 U.S.C. § 816(a)(1). That section is not directly applicable to this action which is brought instead under 30 U.S.C. § 818(a), but it does suggest the deference which this court owes to the findings of the administrative law judge. The record made before him has been submitted in its entirety to this court, and it does contain substantial evidence to support his finding of fact with reference to the search warrant issue.

■ With regard to the merits of the constitutionality issue, there is no dispute that the warrantless inspection provision is constitutional as applied to the coal mining industries, and courts have uniformly so held. See, e. g., *Youghiogheny and Ohio Coal Company v. Morton,* 364 F.Supp. 45 (S.D.Ohio 1973) (3-judge); *Marshall v. Donofrio,* 465 F.Supp. 838 (E.D.Pa.1978), aff'd without opinion 605 F.2d 1196 (3d Cir. 1979), cert. denied 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980); *Marshall v. Sink,* 614 F.2d 37 (4th Cir. 1980). See also *Andrus v. P-Burg Coal Company, Inc.,* 495 F.Supp. 82 (S.D.Ind.1980), affirmed 644 F.2d 1231 (7th Cir. 1981), upholding warrantless inspec-

---

* Plaintiff has moved to amend the complaint to correct the relevant date from May 31, 1978 to June 1, 1978. In response, defendant has filed an amended answer which contains as an affirmative defense defendant's denial that Brey was ordered to leave and not return without a warrant. In both its answer and amended answer, defendant also challenges the constitutionality of the warrantless inspection provision.

tions under § 502 of the Surface Mining and Reclamation Act of 1977, 30 U.S.C. § 1252(e). This is also not a case where the defendant is alleging abuse of process aside from the absence of a warrant in the manner in which the inspection was carried out. Compare *Youghiogheny and Ohio Coal Company v. Morton*, supra, at 52. Thus, the only issue before the court is whether 30 U.S.C. § 813(a)(1) is unconstitutional because it includes stone and gravel quarries within the class of mines which are subject to warrantless inspections.

In *Camara v. Municipal Court of the City of San Francisco*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), the Supreme Court held that warrantless inspections of private property to determine compliance with municipal health codes violate the Fourth Amendment. That prohibition was extended to areas of commercial property not regularly open to the public in *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). In *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), however, the Court upheld a federal statute authorizing warrantless entries onto the premises of liquor dealers for the purpose of ensuring compliance with federal revenue provisions. It based its exception to the warrant requirement on the long history of federal supervision and inspection of the liquor industry. In *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972), upholding the Gun Control Act of 1968, the Court approved the warrantless entry onto the premises of licensed gun dealers for the purpose of ensuring compliance with federal reporting and licensing requirements. The Court noted that "[f]ederal regulation of the interstate traffic in firearms is not as deeply rooted in history as is governmental control of the liquor industry," 406 U.S. at 315, 92 S.Ct. at 1596, but that regulation is crucial to preventing violent crime, that inspection is a crucial part of the regulatory scheme, and that inspection without prior notice is reasonable because of the ease with which violations can be hidden if warning is given. The Court also noted that:

"* * * When a dealer chooses to engage in this pervasively regulated business and to accept a federal license, he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection. Each licensee is annually furnished with a revised compilation of ordinances that describe his obligations and define the inspector's authority. 18 U.S.C. § 921(a)(19). The dealer is not left to wonder about the purposes of the inspector or the limits of his task." 406 U.S. at 316, 92 S.Ct. at 1596.

Finally, in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the Court struck down a provision of the Occupational Safety and Health Act of 1970 authorizing warrantless inspections of any business operating in interstate commerce. The Court found the section to be overbroad and unreasonable in that it included within its purview almost every business in the country. Whereas *Colonnade* and *Biswell* created exceptions for industries with such a history of governmental oversight that no reasonable expectation of privacy can exist for one who chooses to enter that business, the objectionable provision in OSHA attempts to make that exception the rule for all businesses in the United States.

In *Marshall v. Barlow's, Inc.*, supra, at 321, 98 S.Ct. at 1825, the Court also stated:

"Finally, the Secretary urges that requiring a warrant for OSHA inspectors will mean that, as a practical matter, warrantless-search provisions in other regulatory statutes are also constitutionally infirm. The reasonableness of a warrantless search, however, will depend upon the specific enforcement needs and privacy guarantees of each statute. Some of the statutes cited apply only to a single industry, where regulations might already be so pervasive that a *Colonnade-Biswell* exception to the warrant requirement could apply. * * * "

In a decision issued September 15, 1978, this Court declined to find that Congress' statement of purpose in 30 U.S.C. § 801 was

sufficient evidence to establish that a stone quarry is part of a "pervasively regulated industry" within the meaning of the *Colonnade-Biswell* exception to the warrant requirement, and, therefore, it denied the Secretary's request for a preliminary injunction in this case.

Since that time other courts have had occasion to consider the constitutionality of 30 U.S.C. § 813(a)(1) as applied to stone and gravel quarries and most of them have upheld the statute. *Marshall v. Stoudt's Ferry Preparation Company,* 602 F.2d 589 (3d Cir. 1979), cert. denied 444 U.S. 1015, 100 S.Ct. 665, 62 L.Ed.2d 644 (1980); *Marshall v. Nolichuckey Sand Company, Inc.,* 606 F.2d 693 (6th Cir. 1979), cert. denied, 446 U.S. 908, 100 S.Ct. 1835, 64 L.Ed.2d 261 (1980); *Marshall v. Texoline Company,* 612 F.2d 935 (5th Cir. 1980); *Marshall v. Cedar Lake Sand and Gravel Co., Inc.,* 480 F.Supp. 171 (E.D.Wis.1979) (Gordon, J.). There are two exceptions. In *Marshall v. Wait,* 628 F.2d 1255, 1259 (9th Cir. 1980), the Ninth Circuit, while purporting not to reach the issue of the facial constitutionality of the statute, found it unconstitutional as applied to a decorative stone quarry whose operation was "on the fringe of traditional mining" and whose only "miners" were the owner and his wife:

"* * * To emphasize, Wait did not enter a pervasively or traditionally regulated business and thereby subject himself to government supervision and regulation. [Citation omitted.] It would be far more accurate to state that this legislation and regulations adopted pursuant thereto 'entered' Wait's business activity in the very recent past and many decades after its establishment. Under this combination of circumstances, we hold that Wait has not impliedly consented to warrantless inspections of his small, family-owned and operated quarry. * * *·

"* * * Blanket application of this type of regulation to businesses large and small demands that we carefully avoid the trampling under of the rights of those whose expectation of privacy in their enterprises may be real and substantial."

In *Marshall v. Dewey,* 493 F.Supp. 963 (E.D. Wis.1980), probable jurisdiction noted sub nom. *Donovan v. Dewey,* —— U.S. ——, 101 S.Ct. 937, 67 L.Ed.2d 108 (1981), Judge Warren denied the Secretary's motion for summary judgment in the case of a sand and gravel quarry and dismissed the suit for injunctive relief on the ground that such quarries do not have a long history of pervasive regulation but rather have been subject to federal regulation only since the enactment of the 1966 Federal Metal and Nonmetallic Mine Safety Act. He also held that the provisions for court review of inspections give only an illusory protection to the privacy interests of individual owners since if they refuse to permit an inspection, thus forcing the Secretary to go to court for injunctive relief, they also subject themselves to a citation and possible fine before an administrative law judge, and imposition of the fine may precede the federal court decision on the propriety of the warrantless search.

The *Wait* decision is inapplicable to the facts of this case. As the administrative law judge found, Halquist Stone Company, Inc., has both a pit area for the extraction of stone by blasting and a stone cutting operation with a total of about a dozen employees. Thus, although not a huge operation, it is well within the traditional understanding of a stone quarry. I am also compelled to disagree with Judge Warren that the lack of a *long* history of pervasive regulation takes stone quarries outside of the *Colonnade-Biswell* exception to the Fourth Amendment warrant requirement. The Gun Control Act provision upheld in *Biswell* postdates by two years the 1966 act regulating quarries and instituting a warrantless inspection procedure. I do agree that the possibility of receiving a citation and fine prior to court review imposes a burden on a quarry operator who believes he has a legitimate reason to oppose warrantless entry. If the constitutionality of the warrantless inspection provision is upheld, however, there will be few cases in which an owner will have a legitimate basis for refusing access since his consent will not be a prerequisite to a lawful search. *United States v. Biswell,* supra.

It would be unduly repetitive to set forth the reasoning of those courts which have upheld the constitutionality of 30 U.S.C. § 813(a)(1). The reasoning in all cases is substantially identical. Among the factors stressed are the following: the existence of a fifteen-year history of pervasive federal regulation and a long and significant, if uneven, history of state regulation, 1966 U.S.Code Congressional and Administrative News at page 2849; the significance of the federal interest in protecting the safety of miners and the history of hazards and accidents in the quarrying industry, 1966 U.S. Code Congressional and Administrative News at pages 2847 n. 1 and 2851; 1977 U.S.Code Congressional and Administrative News at pages 3403–3404 and 3427; *Marshall v. Stoudt's Ferry Preparation Company*, supra, at 594; *Marshall v. Holichuckey Sand Company, Inc.*, supra, at 696; the limitation on the possibility of abuse created by the legislative concentration on a single industry which increases the likelihood that industry operators will be aware of the regulations and the legitimate scope of any searches, and the provision for the use of court process rather than force even though no warrant is required if consent to inspect is not given, *Marshall v. Stoudt's Ferry Preparation Company*, supra, at 594; *Marshall v. Texoline Company*, supra, at 937; and the possibility that certain abuses could be concealed were a warrant a prerequisite, 1977 U.S.Code Congressional and Administrative News at 3427; *Marshall v. Stoudt's Ferry Preparation Company*, supra, at 593.

On review of the relevant decisions, I am persuaded by the reasoning of those courts which have upheld the constitutionality of the warrantless inspection provision contained in 30 U.S.C. § 813(a)(1) that it is designed to remedy significant health and safety hazards in the mines of this country; that those hazards exist in significant numbers in stone and gravel quarries as well as in operations more traditionally thought of as "mines"; that the legislation is reasonable in that it does not apply to any except the active mining areas of a quarry operation and provides reasonable notice to a quarry owner of the objectives of the inspections; that it is also reasonable in that it provides a mechanism for an operator to air any specific objections to an inspection or claimed abuses of process before a district court or an administrative law judge and then a court of appeals; and finally, I am persuaded that a quarry operator in the present day has no significant expectation of privacy and freedom from regulation in the active areas of his operation. The statute serves a legitimate governmental function, it is reasonably circumscribed, and it does not unduly infringe on the rather limited privacy expectations of a quarry operator.

For the foregoing reasons,

IT IS ORDERED that the plaintiff's motion to amend the complaint is granted.

IT IS FURTHER ORDERED that the plaintiff's motion for summary judgment is granted, and the defendant, its agents and employees are permanently enjoined from refusing to admit authorized representatives of the plaintiff to, upon, or through the active mining areas of the stone and gravel quarry; from refusing to permit the inspection of the active mining areas of the stone and gravel quarry by authorized representatives of the plaintiff; and from interfering with, hindering, and delaying authorized representatives of the plaintiff in carrying out the provisions of the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 801 et seq.