George YENETSKIE

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE.**

Civ. A. No. 76–2277.

United States District Court, E. D. Pennsylvania.

Feb. 17, 1977.

A. John Miernicki, Shenandoah, Pa., for plaintiff.

David W. Marston, U. S. Atty., Philadelphia, Pa., for defendant.

### MEMORANDUM AND ORDER

TROUTMAN, District Judge.

This is a so-called "Black Lung" case arising under Part B, Title IV of the Federal Coal Mine Health and Safety Act, 30 U.S.C. § 901 *et seq.* Said Act establishes a program for the payment of benefits to living miners who are totally disabled due to pneumoconiosis arising out of coal mine employment and to the dependents of miners who die due to pneumoconiosis, or who were totally disabled due to pneumoconiosis at the time of their death.

The Administrative Law Judge (ALJ) has made the following findings:

"2. Claimant had only in excess of three (3) years of qualifying coal mining employment, preceded and followed by 13 years of self-employed coal mining.

\* \* \* \* \* \*

"7. Due to the limited coal mine employment found and both preceding and subsequent many years of self-employed coal mining, no causal relationship nor presumptions can be established between the qualifying coal mine employment and the presence of the disease.

"8. Claimant is not entitled to Black Lung Benefits."

(R. 13, 14) .

The plaintiff suffers from pneumoconiosis and its unfortunate effects and the ALJ has so found:

"5. Credible X-ray interpretations do establish that claimant has pneumoconiosis.

"6. The credible evidence, including X-ray, pulmonary function study results and other relevant evidence of record, does demonstrate a significantly impaired lung function as a result of a chronic respiratory or pulmonary condition."

(R. 13)

Thus, plaintiff has apparently had sufficient exposure to mines and mining or other conditions to have contracted this unfortunate disease with its resultant disability, the condition which the Federal Coal Mine Health and Safety Act (Act) sought to reach by providing benefits therefor. That this plaintiff so suffers from this disease is

understandable, considering that he has been exposed to the dust-laden atmospheric conditions incident to mines and mining since he was twelve years of age or earlier when he accompanied his father into what were then so-called "bootleg" or "independent" mines (R. 37). He thus worked with his father until graduation from high school in 1937 (R. 37). His work with his father was necessarily principally confined to weekends and summer due to his schooling to and including 1937.

Thereafter, his work for a short period of time with "Philadelphia and Reading" "through 1941" was not in the mines, but rather was in a completely outside environment, repairing roads, albeit the material from coal refuse banks was used in the course of road repairs and maintenance (R. 39). He then worked for the East Bear Ridge Coal Company in 1944, earned only $132.00 (R. 41), when he went into the service following which he went back to East Bear Ridge and earned $6.62 before buying a barbershop (R. 42) in which he was self-employed as a barber. In 1959 he started selling World Book Encyclopedias (R. 42), but went back to his barbershop in 1968 or 1961 (R. 43, 44). While operating the barbershop, he also engaged in "independent" mining which he described as including the picking, cracking, hauling and selling of said coal by means of a pick-up truck (R. 43). In the performance of such work he described himself as self-employed:

"Q. What did you do there?
A. I picked coal, sold it, cracked it, hauled it—mostly we sold it to brakers there.
Q. Uh-huh.
A. Rock coal.
Q. Did you work for yourself?
A. Mostly, yes.
Uh-huh.
Yes."

(R. 43)

In 1968 he went back to selling the World Book again and so continued until 1970 since which time he has not worked (R. 44).

Thus, at an early age he assisted his father on weekends and summers in the strippings and coalholes to maintain the family apparently on a bare subsistence during the depths of the great depression (R. 62). He worked in coalholes weekends and during the summer recess (R. 64) either for his father, during the years 1925 to 1934, and for Albert Machise from 1934 to 1937. He also worked *with* but not *for* his brother-in-law.

"Q. '30—'34 to '40, you said that you'd been in independent mining for yourself.
A. That was with my brother-in-law, too. We were—in '34 when I was working with Machise, at that time if—if they didn't sell coal—if there was a load standing there where we wheeled this coal out, we just didn't work the next day. So, we two— my brother-in-law used to go up in the strippings where we had a hole ourself. Everybody had coal hole at that time.
Q. Uh-huh.
All right.
A. And we'd load, you know, we'd load—
Q. Then you were doing—
A. He had a truck—
Q. Then you were doing other work on your own as an independent operator with your brother-in-law and with your father?
A. Yes.
Q. So, that you were doing these two things at the same time.
A. Oh, yes."

(R. 71, 72)

He reiterated that while operating his barbershop he engaged in part-time "independent" mining but in a self-employed capacity.

"Q. After—after you opened your barber shop, did you ever go back into the mines?
A. Just—just independent mining off and on. Part time.
Q. And what—what type of duties would you—or what type of job would you do?

A. Drilling coal, blasting coal, loading coal.

Q. Was that for yourself?

A. Yes."

(R. 76)

In his application for benefits (R. 100), plaintiff represents himself as self-employed except as to his employment with East Bear Ridge. His "statement of earnings" (R. 112 *et seq.*) does not show any substantial employment not heretofore discussed. His Army Separation Record (R. 119) and United Mine Workers Report (R. 133) are corroborative. Other evidence of record is less convincing.

■ Judicial review is normally limited to determining whether the findings of the Secretary are supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Here, however, the Council finding: i. e., that the plaintiff had only limited coal-mine *employment* but was otherwise engaged, part time, in *self-employed* mining is based upon the failure of the plaintiff to meet his burden of proof.

"Section 410.110(j) of Regulations No. 10 of the Social Security Administration, as amended September 30, 1972 (20 CFR 410.110(j)) provides:

' "Miner" or "coal miner" means any individual who is working or has worked as an employee in a coal mine, performing functions in extracting the coal or preparing the coal so extracted.'

"Section 410.110(m) of Regulations No. 10 of the Social Security Administration (20 CFR 410.110(m)) provides in part:

' "Employee" means an individual in a legal relationship (between the person for whom he performs services and himself) of employer and employee under the usual common law rules'."

■ Thus, it is evident that recovery of benefits is predicated upon an employee-employer relationship. Self-employment, although involving like duties, like exposures and like results does not qualify under the Act and regulations governing benefits. Admittedly, the plaintiff's suffering and hardships as a self-employed victim of "Black Lung" are no less than those of "employed" victims. In a sense he is being penalized for his virtues in working as a boy and young man assisting his father and family in times of unsurpassed depression, in being sufficiently ambitious to have worked evenings and weekends while otherwise employed and self-employed as a book salesman and barber, and in telling the truth in filing his application for benefits, on the witness stand, to the Army authorities and otherwise. That, however, is a matter for the Congress and those charged with the responsibilities of deciding the limitations and perimeters of social legislation designed to distribute governmental funds and benefits. It is not the function of the courts to expand statutory benefits beyond their expressed or implied limitations. That is a legislative function.

In reaching our conclusion, we are not unmindful of the decisions of this Court in *Sacco v. Mathews,* D.C., 426 F.Supp. 1190 (1976); *Karpovich v. Mathews,* D.C., 426 F.Supp. 1316 (1977); and *Birmingham v. The Secretary of Health, Education and Welfare,* 426 F.Supp. 1320 (1977) in which the so-called "bootleg" or "independent" mining industry was discussed. Those cases, however, involved the difficulty of *proving* "employment" in such industry. Here, there is involved the admitted "self-employment" of the plaintiff in such industry as a youth and on a part-time basis as an adult. The difficulty of proving the former does not preclude the latter. That the plaintiff has not met the burden of proving the required employment is supported by substantial evidence including his testimony and admissions. We shall grant the defendant's motion for summary judgment.