Ray **MARSHALL, Secretary of Labor,** **United States Department of Labor**

v.

Bobby **DONOFRIO, Ronald Donton and** **Robert Rhen, Individually and D. D. &** **R. Coal Company, a co-partnership composed of Bobby Donofrio, Ronald Donton and Robert Rhen.**

**Civ. A. No. 78–2667.**

**United States District Court,** **E. D. Pennsylvania.**

**Nov. 16, 1978.**

6.  The statute is explicit on these points. 42 U.S.C. § 423(d)(2)(A).

Alexander Ewing, Jr., Asst. U. S. Atty., Philadelphia, Pa., Alan Yamamoto, Trial Atty., Arlington, Va., for plaintiff.

Warren Vogel, Thomas B. Rutter, Ltd., Philadelphia, Pa., for defendants.

## OPINION AND ORDER

HUYETT, District Judge.

Plaintiff Secretary of Labor has brought this action pursuant to the Federal Coal Mine Health and Safety Act of 1969, *as amended*, 30 U.S.C. §§ 801–825. (Coal Mine Act). The Secretary seeks to enjoin the defendants from denying authorized agents of the Secretary of Labor access to their coal mine. On September 1, 1978, we conducted a hearing on the motion for a preliminary injunction, with all parties represented.

Following the hearing, we determined that it would be inappropriate to grant preliminary injunctive relief. Nevertheless, the parties were able to stipulate to many facts at the hearing. In view of this, we asked the parties either to stipulate that the hearing be deemed a final hearing on a permanent injunction, or to file cross-motions for summary judgment. The parties agreed to follow the latter course. There-

fore, we now have pending before us cross-motions for summary judgment.[1]

The undisputed facts may be summarized as follows. Defendants Bobby Donofrio, Ronald Donton, and Robert Rhen, co-partners doing business as D. D. & R. Coal Company, are engaged in the business of mining anthracite coal in Schuylkill County, Pennsylvania. The only persons working in the mine operated by the partnership are the partners themselves. Michael Scheib is an authorized agent of the Secretary of Labor empowered to conduct coal mine inspections pursuant to the provisions of the Coal Mine Act. On May 12, 1978, Scheib conducted a routine inspection of the defendants' mine and found several violations of the Coal Mine Act. Scheib issued citations relative to these violations and gave the defendants until June 12, 1978 to remedy them.

On June 13, 1978, Scheib returned to inspect the mine and to see if the previously noted violations of the Coal Mine Act had been corrected. Scheib had no search warrant to inspect the coal mine. Defendants requested production of a search warrant and, when none was forthcoming, refused to admit Scheib to the mine. Scheib then issued a citation to the defendants under Section 104(a) of the Coal Mine Act, 30 U.S.C. § 814(a).

On or about June 15, 1978, Scheib returned to defendants' mine to conduct an inspection and was again refused admittance because he did not have a search warrant. At that point, Scheib issued an order of withdrawal against defendants' mine pursuant to Section 104(b) of the Act, 30 U.S.C. § 814(b).

The issues presented before us on this motion are very narrow. First, we must determine if the defendants are subject to the provisions of the Coal Mine Act or, as defendants strenuously argue, if they are

---

1. No hearing was held on the motions for summary judgment. However, we held a lengthy hearing on the motion for a preliminary injunction, at which time the parties argued the legal issues which are presently before us. No new contentions have been made at this time which were not raised when the motion for a preliminary injunction was argued. In the absence of any request from counsel for oral argument, we believe that oral argument on the motions for summary judgment would be superfluous.

exempt from the Coal Mine Act's coverage because the only persons who work in the mine are the defendants themselves. Second, we must consider whether, in view of *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), warrantless inspections made pursuant to the Coal Mine Act comport with the Fourth Amendment.

### I.

Defendants claim that the Coal Mine Act does not cover mines that are totally owned and operated by the same persons; that is, those mines where the only persons working therein are the owners themselves. We cannot accept this argument. The Coal Mine Act clearly states that it applies to all coal mines "the products of which enter commerce, or the operations or products of which affect commerce" [2] and "each operator and every miner" in such mine. 30 U.S.C. § 803. We find no explicit exemption in the Coal Mine Act for owner-operated mines, and defendants' counsel at oral argument conceded that there was none.

Defendants argue, however, that the exemption to the Coal Mine Act for owner-operated mines is implicit in the Act's total regulatory scheme. This assertion is based upon an examination of the legislative history, in which Congress stated repeatedly that a major purpose of the Act was to prevent mine owners and operators from compromising the health and safety of miners, and upon an examination of the provisions of the statute. Defendants assert that these two sources make it clear that miners and owners or operators are not intended to be the same persons. From this conclusion, defendants infer that owner-operated mines were intended to be excluded from the Act.

We find this argument to be unpersuasive. We believe that the Coal Mine Act's broad definition of "miner" as "*any* individual working in a coal . . . mine" rebuts any inference that a "miner" cannot also be an owner or operator. 30 U.S.C. § 802(g). This definition should be compared with the definition of "miner" formerly employed for purposes of "Black Lung" benefits—"any individual who is or was *employed* in a coal mine." 30 U.S.C. § 902(d).[3] We believe that Congress had a purpose for using different language to define "miner" in these two separate portions of the same Act. For purposes of Black Lung benefits, the employer-employee relationship was significant, and self-employed miners were held to be excluded from the Act's coverage. *See Yenetskie v. Secretary of Health, Education and Welfare*, 426 F.Supp. 1372 (E.D.Pa.1972). However, for our purposes, no such distinction is made. Miners like defendants who also operate the mines in which they work are nonetheless "individual[s] working in a coal . . . mine."

Finally, there is evidence that Congress was expressly made aware of the possibility that owner-operated mines would be included within the Coal Mine Act's coverage at the time the Act was amended in 1966 to extend coverage to mines employing less than fifteen men underground. *See* S.Rep. No.1055, *reprinted at* 1966 U.S.Code Cong. & Admin.News, pp. 2072, 2087 (Statement of Senator Cooper). Although Congress was aware of the problem, it chose not to exempt such mines at that time or at any time subsequent.[4] We cannot conclude, therefore, that the failure explicitly to exempt owner-operated mines from the Act was the result of mere inadvertence.

---

2.  At the hearing, counsel for defendants stated they did not contest the fact that the operations of their coal mine "affected commerce."

3.  The definition of "miner" for purposes of Black Lung Benefits was changed by the Black Lung Benefits Reform Act of 1977, Pub.L. 95–239, 92 Stat. 95, to encompass "any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal." Thus, under this

amendment, owners or operators who also work in coal mines may be eligible for Black Lung Benefits.

4.  We note that a bill was introduced in the House of Representatives in December, 1977, which would exempt mines of two or fewer individuals from coverage under the Act. See H.R.10324. This bill has not been enacted to date.

When faced with the same issue we are faced with here, Judge Muir concluded that, "[A]lthough it seems entirely rational that it would do so, the [Coal Mine Act] does not exempt mines which are owner-operated." *Secretary of Interior v. Shingara*, 418 F.Supp. 693 (M.D.Pa.1976). We agree, and therefore conclude that defendants are subject to the jurisdiction of the Coal Mine Act.

## II.

Having found that defendants are subject to the provisions of the Coal Mine Act, we now proceed to decide whether the Secretary's agent had a right to inspect the defendants' coal mine without a search warrant. Section 201(a) of the Coal Mine Act, 30 U.S.C. § 813(a), authorizes representatives of the Secretary to make frequent inspections of coal mines. The legislative history makes it clear that the right to inspect was intended to be absolute, without the need to obtain a warrant. S.Rep. No.95–181, *reprinted at* U.S.Code Cong. & Admin.News (1977), pp. 3401, 3427.

We must begin our analysis with an examination of *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), where the Supreme Court held that warrantless searches pursuant to the Occupational Safety and Health Act of 1970 (OSHA) were violative of the Fourth Amendment to the Constitution. However, the Court's opinion further stated that the holding did not necessarily invalidate warrantless searches under other statutory schemes.

Section 8(a) of OSHA, the section challenged in *Barlow's*, empowers OSHA inspectors to search the work area of any employment facility within the Act's jurisdiction, which includes every private employer engaged in a business affecting commerce. 29 U.S.C. § 652(5). There is no express requirement in OSHA that a warrant be obtained prior to an inspection. The Supreme Court held that a warrantless search is unreasonable in the absence of a recognized exception to the warrant requirement, and concluded that no such exception was applicable to OSHA searches.

One of the exceptions to the warrant requirement discussed at length by the *Barlow's* Court, is the so-called "closely-regulated industry" exception. This exception stems from two Supreme Court cases: *Colonnade Corporation v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970), and *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972). In those cases, warrantless searches were deemed permissible when employed in connection with certain closely-regulated enterprises because "certain. industries have such a history of government oversight that no reasonable expectation of privacy could exist for a proprietor over the stock of such an enterprise." *Marshall v. Barlow's, Inc.*, *supra*, 436 U.S. at 312, 98 S.Ct. at 1821.

In *Biswell*, a case which we believe merits close examination, the Supreme Court held that the interstate sale of firearms was a closely-regulated industry. The *Biswell* Court, however, appeared to use a balancing test to decide if the warrant requirement was applicable in a specific context. Factors considered by the Court were the urgency of the federal interest furthered by the regulatory scheme, the possibility that the warrant requirement might impair the effectiveness of that scheme, the possibility of abuse of the power to conduct warrantless searches, and the threat of a warrantless search to a businessman's justifiable expectation of privacy. *United States v. Biswell*, *supra*, 406 U.S. at 315–17, 92 S.Ct. 1593. *See Note: Administrative Search Warrants*, 58 Minn.L.Rev. 607, n. 41 (1974).

Although the *Biswell* "balancing test" was not expressly embraced by the Supreme Court in *Barlow's*, we believe that many of the factors considered by the *Barlow's* Court in determining if a warrant was required under OSHA are those same factors enumerated in *Biswell*. In determining whether to apply the "closely-regulated industry" exception the Supreme Court in *Barlow's* emphasized the pervasiveness of the regulation in a given industry and whether, in view of that pervasiveness, a businessman can be deemed to have im-

pliedly consented to a search by entering the industry in the first instance. 436 U.S. at 313–314, 98 S.Ct. 1816. However, the Court proceeded to consider the effect of a warrant requirement on the enforcement of OSHA and the "unbridled discretion" that OSHA's warrantless search requirement ceded to administrative officials. We conclude that *Barlow's* mandates that lower courts examine several factors in determining the reasonableness of a warrantless search under a particular statutory scheme, and balance those factors carefully in reaching its conclusion. *See generally The Constitutionality of Warrantless OSHA Inspections*, 22 Vill.L.Rev. 1214 (1977).

In considering the factors set forth in *Biswell* and *Barlow's* as applied to the problem at hand, we emphasize first the lengthy history of pervasive regulation in the coal mine industry, particularly in the area of safety. The coal mine industry has been regulated since the early part of this century; inspections have been authorized since 1940. In *Youghiogheny & Ohio Coal Co. v. Morton*, 364 F.Supp. 45 (S.D.Ohio 1973) (three-judge court), the court, after a detailed discussion of the history of regulation in the coal mine industry, concluded that coal mining was a closely regulated industry within the *Colonnade-Biswell* exception. We agree. Although the history of regulation may not be so long as in the alcohol or firearm industries, we believe that the history of regulation in the coal mine industry is sufficiently extensive so that anyone entering the field would be aware of the extent of the regulation and would have little justifiable expectation of privacy with respect to safety regulation.

Second, we note that the regulatory scheme here covers a single industry, in contrast to the wide-ranging scheme contained in OSHA covering all industries which affect commerce. *Marshall v. Barlow's, supra*, 436 U.S. at 314, 98 S.Ct. 1816. The significance of this narrow focus lies in the increased possibility that a businessman engaged in the industry will be aware of the nature and scope of the regulation. This additional notice tends to lessen any justifiable expectation of privacy.

Third, urgent federal interests are served by inspections under the Coal Mine Act. The primary interest relates to the safety of miners; however, a significant economic interest is implicated as well. As our country becomes more dependent upon coal as an energy source, it becomes more vital to keep coal mines safe and operational.

We believe the possibility that a warrantless search will be abused is less under the provisions of the Coal Mine Act than under the statutory scheme invalidated in *Barlow's*. Under OSHA, broad authorization to inspect was given with practically no limits set upon the scope of the search. *See Marshall v. Barlow's, Inc., supra* at n. 21. By contrast, the Coal Mine Act states with specificity the purpose and frequency of inspections. 30 U.S.C. § 813(a). Section 201(a) of the Coal Mine Act requires that the Secretary conduct inspections of underground coal mines at least four times per year for the purposes of determining whether an imminent danger exists and determining if there is compliance with mandatory health and safety standards or previously issued citations. *Id.* In the case before us, the actual purpose of the inspection was to ascertain if prior violations of the Act had been abated. This is a purpose clearly authorized by the statute.

Finally, we believe that a warrant requirement would hamper inspection efforts authorized by the Coal Mine Act. This was clearly the conclusion of Congress. The Senate Report, citing to the *Youghiogheny* case with approval stated that the "right of entry" provided for in Section 201(a) was intended to be an absolute right, without the need to obtain a warrant. S.Rep.No. 95–181, *reprinted at* 1977 U.S.Code Cong. & Admin.News p. 3427. The Report adds, "Indeed, in view of the notorious ease with which many safety or health hazards may be concealed if advance warning of inspection is obtained, a warrant requirement would seriously undercut the Act's objectives." *Id.*

Of course, the fact that a warrant requirement may hamper a regulatory

scheme, by itself, is not a reason for abolishing the warrant requirement. However, in this case, in view of the limits on inspections set by the Coal Mine Act and the lowered expectation of privacy of a party entering the coal mine industry, there are few countervailing reasons for requiring a warrant. *See United States v. Biswell, supra* at 316.

Defendants argue that the *Colonnade-Biswell* exception extends only to federally-licensed businesses. However, the language used by *Barlow's* is "closely regulated industry," not federally licensed industry. Therefore, we do not believe federal licensure is a prerequisite to application of the *Colonnade-Biswell* exception.

After considering all of the foregoing factors, we conclude that warrantless inspections conducted under Section 201(a) of the Coal Mine Act do not run afoul of the rationale of *Marshall v. Barlow's*, or the restraints of the Fourth Amendment.

We therefore grant plaintiff's motion for summary judgment and enjoin the defendants from denying authorized agents of the Secretary of Labor access to their coal mine.