**Robert and Beverly OHNTRUP**

v.

**FIREARMS CENTER INCORPORATED et al.**

v.

**MAKINA VE KİMYA ENDUSTRISI KURUMU.**

**Civ. A. No. 76–742.**

United States District Court, E. D. Pennsylvania.

June 30, 1981.

Robert A. Davitch, Jerome H. Jaffe, Sidkoff, Pincus, Greenberg & Green, P. C., Philadelphia, Pa., for plaintiff.

James A. Wayne for Firearms Center, pro se.

John R. McConnell, Morgan, Lewis & Bockius, Philadelphia, Pa., for third party defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiffs Robert and Beverly Ohntrup commenced this action on March 11, 1976 to recover, under theories of warranty, product liability and negligence, for injuries allegedly sustained by Robert Ohntrup when a gun he was using malfunctioned. Plaintiffs, citizens of Pennsylvania, invoked the diversity jurisdiction of this court to bring suit against Firearms Center Incorporated ("FCI") and the Waynes, citizens of Texas, from whom plaintiffs had purchased the allegedly defective gun. On August 30, 1976, these defendants impleaded Makina ve Kimya Endustrisi Kurumu ("Makina"), a Turkish corporation whose stock is wholly owned by the Turkish Government, on the ground that Makina had manufactured the gun and sold it to defendants. Plaintiffs amended their complaint, on December 21, 1977, to include claims against Makina. On the eve of trial, Makina moved to dismiss the claims against it on the ground that it is entitled to invoke sovereign immunity, hence depriving this court of jurisdiction over the claims asserted against it.

A. *Sovereign Immunity Goes to The Subject-Matter Jurisdiction of the Court.*

Makina's motion to dismiss was untimely, and Makina more than once failed to comply with this court's directions as to the filing of the papers required for the determination of the motion. Therefore, in a letter dated December 18, 1980, Makina was notified by the court that non-compliance with the directions contained in that letter would be deemed to be a waiver by Makina of its defense of sovereign immunity. As Makina failed to comply with the directions contained in that letter, the first question to be determined is whether the court may decline to entertain the defense of sovereign immunity or whether, as contended by Makina, sovereign immunity goes to this court's subject-matter jurisdiction. This requires an initial determination of whether the Foreign Sovereign Immunities Act of 1976 (the "Act"), 28 U.S.C. §§ 1330, 1602 *et seq.* governs the entire action, or whether it applies only to the plaintiffs' claims against Makina, which were filed after the effective date of the Act, and not to FCI's third-party claims, which were filed prior to that date.

Plaintiffs and Makina agree that the issues presented by this motion are governed by the Act. Under the Act, the jurisdiction of this court is governed by 28 U.S.C. § 1330(a), which provides that "district courts shall have original jurisdiction ... as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity ... under sections 1605–1607 of this title...." The district court must, therefore, first consider whether a foreign state is entitled to immunity under sections 1605–1607 of the Act: If it is, the court loses subject-matter jurisdiction over the claim against that state. Thus, a determination that Makina is entitled to immunity under the Act would deprive this court of subject-matter jurisdiction over plaintiffs' claims against Makina; and, if, in addition, the Act is given retroactive application to FCI's claims against Makina, a determination that Makina is entitled to immunity would deprive this court of subject-matter jurisdiction over all claims against Makina in this controversy. *Sugarman v. Aeromexico, Inc.,* 626 F.2d 270 (3d Cir. 1980).

The substantive immunity principles set forth in the Act have been given retroactive application, the courts relying on the language of the Act's Preamble, which states that "henceforth" claims of immunity should be decided in accordance with the principles of the Act. *See e. g. Yessenin-Volpin v. Novosti Press Agency,* 443 F.Supp. 849 (S.D.N.Y.1978). But, in the only case to pose the retroactive applicability of the provision conferring subject mat-

ter jurisdiction, the Second Circuit Court of Appeals concluded that the language in the Preamble was intended to apply to substantive immunity law alone, and declined to give the subject-matter jurisdiction provisions retroactive effect. Moreover, the court reasoned that the retroactive application of a provision affecting subject-matter jurisdiction would be open to constitutional question. *Corporacion Venezolana de Fomento v. Vintero Sales Corporation*, 629 F.2d 786, 790 (2d Cir. 1980). This need not, however, be decided in this action as, under the principles applicable prior to the enactment of the Act, the determination that a defendant was entitled to invoke sovereign immunity acted to deprive the court of subject-matter jurisdiction:

> [T]he commander of the national vessel exercises a part of his sovereign power; and in such a case no consent to submit to the ordinary judicial tribunals of the country can be implied.... Such consent is implied where the municipal law, previously provides and changes the law of nations... But it cannot be implied where the law of nations is unchanged, nor where the implication is destructive of the independence, the equality and dignity of the sovereign. Such jurisdiction is not given by the constitution of the United States, nor is it mentioned in the judiciary act. If so important a jurisdiction was intended to be given, it would certainly have been mentioned and regulated by law...

*The Schooner Exchange v. M'Faddon*, 11 U.S. 116, 121, 7 Cranch 116, 123–124, 3 L.Ed. 287 (1812). Thus, under either the law as it existed prior to the passage of the Act, or the Act, a determination that Makina is entitled to invoke sovereign immunity would operate to deprive this court of subject matter jurisdiction. This court is

therefore not free to determine that Makina's untimely motion and its subsequent dilatory conduct acted to waive its defense of sovereign immunity.

**B. *Makina's Entitlement to Invoke Sovereign Immunity***

■ The substantive provisions of the Act are applicable to determine Makina's entitlement to invoke sovereign immunity, both as to plaintiffs' claims, and retroactively as to FCI's claim. *Corporacion Venezolana, supra.* Makina is a Turkish corporation whose stock is wholly owned by the Turkish government, and it is not incorporated in any other country. It is therefore, a "foreign state" within the meaning of the Act, 28 U.S.C. §§ 1603(a) and (b), and immune from this suit, 28 U.S.C. § 1604, unless it comes within one of the exceptions listed in Section 1605. Plaintiffs argue that (1) Makina has waived the defense of sovereign immunity, Section 1605(a)(1), and (2) that this transaction falls within the commercial exceptions listed in Section 1605(a)(2).

**1. *Waiver Under Section 1605(a)(1)***

■ Plaintiffs [1] argue that, pursuant to Section 1605(a)(1),[2] Makina has impliedly waived any right it might have to invoke sovereign immunity in Item 11 of the Sales Agreement between Makina and FCI:

> Any dispute between the parties, arising in connection with the application of this agreement, will be handled and solved by Paris International Court.

A waiver of sovereign immunity may be inferred from an agreement to arbitrate a dispute in another country or to refer disputes to the laws of another country:

> With respect to implicit waivers, the courts have found such waivers in cases

---

**1.** While FCI, which is proceeding *pro se*, has also filed a response to Makina's motion, this simply consists of several exhibits without legal argument. Thus, the legal arguments as to the issues considered on this motion have been made by plaintiffs and Makina.

**2.** Section 1605(a)(1) provides:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
> (1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;

where a foreign state has agreed to arbitration in another country or where a foreign state has agreed that the law of a particular country should govern a contract.

H.R.Rep.No. 94–1487, 94th Cong. 2d Sess. 18 *reprinted in* [1976] U.S.Code Cong. & Admin.News 6604, 6617. But a waiver of immunity by a state as to one jurisdiction cannot be interpreted to be a waiver as to all jurisdictions. The quoted passage from the House Report does not mandate a contrary conclusion, as it is unclear whether, in referring to "another country", Congress intended to include a third-party country. While it is reasonable to conclude that an agreement by a foreign country to either arbitrate disputes in or be governed by the laws of the United States constitutes an implicit waiver by that state of the defense of sovereign immunity in the courts of the United States, it is much more difficult to infer such a waiver from the agreement of a foreign state to submit itself, in the same manner, to the jurisdiction of a state other than the United States. In support of their position, plaintiffs cite *Ipitrade International, S. A. v. Federal Republic of Nigeria*, 465 F.Supp. 842 (D.C.D.C.1978). But, in *Ipitrade*, the dispute had already been arbitrated, as provided in the contract, in the International Chamber of Commerce, Paris, France, and the action in the District Court was one to enforce the arbitration award. Jurisdiction over the enforcement action was provided by a treaty to which both the United States and Nigeria were signatories. *Ipitrade*, does not, therefore, offer significant support for the proposition urged by plaintiffs. *Verlinden B. V. v. Central Bank of Nigeria*, 488 F.Supp. 1284 (S.D.N.Y.1980). Moreover, Makina agreed only to the arbitration of disputes between *the parties*—i. e. between Makina and FCI—and only insofar as the dispute arose out of the agreement. This waiver cannot be interpreted to include the dispute at issue in this suit, which involves an injury to a third-party, and which does not call into issue the contract between Makina and FCI. This action does not, therefore, fall within 28 U.S.C. § 1605(a)(1).

## 2. *The Commercial Activity Exception*

Plaintiffs argue that the instant action falls within two of the commercial exceptions provided in Section 1605(a)(2):

A foreign state shall not be immune from the jurisdiction of courts of the United States ... in any case

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state ... or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States...

### *Commercial Activity Carried On in the United States*

The Act defines "commercial activity carried on in the United States" as being "commercial activity carried on by such state and having substantial contact with the United States." Plaintiffs argue that, although Makina manufactured and sold the gun in Turkey, this action is one based on a commercial activity having "substantial contact" with the United States in that Makina sold the pistols to FCI for resale in the United States. Makina argues that the activities did not have a substantial contact with the United States and that, in any event, this exception was "designed to cover business torts and breach of contract actions", and that this suit, a personal injury action, is not within the intended coverage of this commercial exception. Makina's Memorandum at 11.

■ Personal injury suits are within the scope of this exception. *Sugarman v. Aeromexico, Inc.*, 626 F.2d 270 (3d Cir. 1980). And the misconduct complained of need not have taken place in the United States. *Sugarman, supra.* Thus, as long as Makina's commercial activities which gave rise to this suit had a "substantial contact" with the United States, this court has jurisdiction over this suit. The sales agreement between FCI and Makina was concluded in Turkey, and the pistols delivered in Turkey. But, the entire relationship between Maki-

na and FCI was intended to be one with "substantial contacts" with the United States: (1) The Sales Agreement is between Makina, and "FIREARMS CENTER INC., Victoria Texas, U.S.A."; (2) In Item-1, it provides that "MKE [Makina] agrees that FCI will be its exclusive representative . . . in U.S.A."; (3) Item-2 provides for a minimum order of 1000 pistols, "to sell in U.S. A." for the first year of the contract, and provides for renewal of the contract with an increase in the minimum order by 20% a year; (4) And in Item-4, the contract requires FCI to provide after-sale service to "the customers in U.S.A.", and provides that "FCI . . . will not jeopardize MKE's reputation . . . by poor service or untrue advertising." Moreover, in a letter dated March 27, 1974 Makina exercised its rights to monitor FCI's advertising practices in the United States. Exhibit 3, FCI's answer to Motion to Dismiss. It is also interesting that, although Makina now insists that it sells pistols only in Turkey, in a letter dated March 27, 1974, written by Makina to FCI, FCI's Memorandum, Exhibit 3, Makina referred to its sales of pistols to FCI as "exports."

■ The commercial activity described above is one which has "substantial contact" with the United States. Makina intended that the pistols be imported into the United States and sold here: This situation is not one where the offending articles were sold outside the United States and "sent into the United States by means wholly outside the control" of the defendant, *Yessenin-Volpin v. Novosti Press Agency*, 443 F.Supp. 849, 855 (S.D.N.Y.1978). And plaintiffs' claims are based upon "the specific commercial activity carried on in the United States", *Harris v. VAO Intourist, Moscow*, 481 F.Supp. 1056, 1061 (E.D.N.Y. 1979)—the export and sales of Makina's pis-

tols in the United States. Moreover, the House Report specifically states that "cases based on . . . [i]mport-export transactions involving sales to . . . concerns in the United States" are included within this exception. House Report at 17, reprinted at 6615. This action is, therefore, "based upon a commercial activity carried on in the United States" by Makina, and Makina is not immune from this suit. 28 U.S.C. § 1605(a)(2).

*Commercial Activity Elsewhere Which Causes a "Direct Effect" In the United States*

Finally, plaintiffs argue that this court has jurisdiction over their claims by virtue of the last clause of Section 1605(a)(2) which creates an exception from the general immunity provision, Section 1604, for actions based upon commercial activities outside the United States which cause a "direct effect in the United States."

This section is to be applied in a manner consistent with both the principles set forth in Section 18, Restatement of the Law, Second, Foreign Relations Law of the United States (1965), House Report at 19, reported at 6618, and those of constitutional due process as set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. House Report at 13–14, reprinted at 6612. Thus, the "direct effect" within this country must be substantial, and a foreseeable consequence of the actions performed elsewhere—requirements derived from Section 18 of the Restatement.[3] *Harris v. VAO Intourist, Moscow, supra*, 481 F.Supp. at 1063. Moreover, the Court of Appeals for the Second Circuit has interpreted the reference to *International Shoe* as imposing the minimum contacts requirement of *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct.

**3.** § 18. Jurisdiction to Prescribe With Respect to Effect Within Territory.

A state has jurisdiction to prescribe a rule of law attaching legal consequences to conduct that occurs outside its territory and causes an effect within its territory, if

\* \* \* \* \* \*

(b)(i) the conduct and its effect are constituent elements of activity to which the rule applies; (ii) the effect within the territory is substantial; (iii) it occurs as a direct and foreseeable result of the conduct outside the territory; and (iv) the rule is not inconsistent with the principles of justice generally recognized by states that have reasonably developed legal systems.

1228, 1239, 2 L.Ed.2d 1283 (1958), that the defendant, in some manner, " 'purposely avail itself of the privilege' of conducting business in the United States." *Carey v. National Oil Corporation*, 592 F.2d 673, 676 (1979).

In the instant action, plaintiff has alleged that he was injured in the United States by a defective pistol which he bought in the United States from defendant, FCI. The pistol is alleged to have been supplied to FCI by Makina pursuant to an agreement between Makina and FCI wherein Makina undertook to supply FCI with pistols "to sell in U.S.A." Item-2, Sales Agreement. The Sales Agreement contains a detailed provision for the handling of "parts for any pistol part determined to be defective", Item-5, Sales Agreement. Makina, therefore, did foresee that some pistols supplied pursuant to the sales agreement, and sold in the United States, could be defective, and provided for that contingency in the Sales Agreement. Thus, the injury in the United States of a purchaser of such a defective gun was both a substantial and foreseeable consequence of Makina's actions.

The requirements of *International Shoe* are also satisfied. As set forth previously, Makina supplied FCI with pistols for sale in the United States, and appointed FCI as its exclusive representative for sales of its pistols in the United States. The Sales Agreement requires FCI to provide for after-sales service, and provides that FCI "will not jeopardize MKE's reputation in any way by poor service or untrue advertising." Item-4, Sales Agreement. Makina monitored FCI's advertising, Enclosure 1, FCI's Memorandum, and apparently did solicit business in the United States. *See* Enclosure 3, FCI's Memorandum. Makina has, therefore "purposely avail[ed] itself of the privilege of conducting business", *Hanson v. Denckla, supra*, 357 U.S. at 253, 78 S.Ct. at 1239, within the United States. This action is, therefore, within the exception for commercial acts which cause a "direct effect" within the United States.

Accordingly, in an accompanying order, Makina's motion to dismiss plaintiffs' and third-party plaintiffs' complaints is DENIED.