**Alexandria**

COMMONWEALTH OF VIRGINIA

v.

DERRELL BURGAN

No. 0999-94-3

COMMONWEALTH OF VIRGINIA

v.

HAROLD DAVIS

No. 1000-94-3

Decided November 8, 1994

COUNSEL

H. Elizabeth Shaffer, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellant.

James E. Rasnic (Rasnic & Rasnic, P.C., on brief), for appellees.

OPINION

**BARROW, J.**—In this appeal we must decide whether the seizure of cigarettes and a cigarette lighter from two miners during an unannounced spot search of a coal mine violated the Fourth Amendment. No statutory or other regulatory scheme authorized a search of these individuals or their personal effects. Therefore, even though mining is a closely regulated industry and the government has a strong and legitimate interest in promoting safety in the industry, we hold that the authorities illegally seized the cigarettes and the cigarette lighter.

Having heard of rumors that miners were smoking on the second shift at Big Fist Coal Company, representatives from the Virginia Department of Mines, Minerals and Energy, the Mine Safety Health Administration, and the office of the Attorney General, went to the company to conduct a "spot inspection." One of the duties of the district mine inspector who accompanied the group was to observe the periodic inspections of the mine at least once every ninety days. According to the district inspector, such inspections could include searches for smoking materials, but "as a matter of policy" did not.

Upon arriving at the company, the inspection group informed the foreman and another person of their purpose and asked them not to inform anyone of their intent. They then proceeded into the mine. As they came upon miners, they asked them to retrieve their lunch buckets and accompany the inspectors to an area, where the foreman conducted a search.

One of the defendants, Davis, was the first miner to be searched. When he pulled back his coveralls for his shirt pockets to be examined, the supervisor saw a pack of cigarettes and ordered the foreman to retrieve them. Davis made no statement.

When they searched the other defendant, Burgan, they found cigarettes and a lighter in his lunch bucket. Burgan stated that the bucket belonged to him but denied that the cigarettes and lighter were his.

The defendants were indicted under former Code § 45.1-98.1 which prohibits any "miner, workman, or other person in an underground coal mine" from "smok[ing] or carry[ing] any smoker's articles or matches, lighters, or similar materials generally used for igniting smoker's articles." In a pretrial hearing, the trial court ordered the suppression of the materials seized from the defendants. The Commonwealth appeals the suppression order.

The Commonwealth argues that because mining is a "closely regulated industry," the search of miners for smoking materials falls within a recognized exception to the Fourth Amendment prohibition against unreasonable searches and seizures. This exception has been applied to the search of commercial premises, not to searches of the person. The Commonwealth, however, argues that

the exception logically extends to searches of individual coal miners. We disagree.

■ An exception to the warrant requirement exists where commercial premises of "closely regulated industries" are searched. *See New York v. Burger*, 482 U.S. 691, 699-700 (1987) (upholding warrantless inspection of auto junkyards); *Donovan v. Dewey*, 452 U.S. 594, 601-02 (1981) (upholding statute authorizing warrantless inspections of underground and surface mines). In order to fall within this exception, the warrantless search must meet three criteria. First, "there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made." *Burger*, 482 U.S. at 702. Second, "the warrantless inspections must be 'necessary to further [the] regulatory scheme.' " *Id*. Third, the inspection program must "provide a constitutionally adequate substitute for a warrant" by informing the owner that inspections will occur regularly, and notifying him or her of the permissible scope and who may conduct the inspections, as well as requiring that the permitted inspection is "carefully limited in time, place, and scope." *Id*. at 703.

## SUBSTANTIAL GOVERNMENT INTEREST

■ "[T]he mining industry is among the most hazardous in the country," and the government has a substantial interest in "improving the health and safety conditions in the Nation's underground and surface mines." *Dewey*, 452 U.S. at 602. Both the federal and state legislatures have recognized this interest, and have established regulations governing mining. *See, e.g.*, MSHA; Virginia Mine Safety Law. The defendants concede that the government has such an interest in mining safety.

## NECESSARY TO FURTHER REGULATORY SCHEME

■ "[I]f inspection is to be effective and serve as a credible deterrent, unannounced, even frequent inspections are essential. In this context, the prerequisite of a warrant could easily frustrate inspection." *Dewey*, 452 U.S. at 603 (quoting *United States v. Biswell*, 406 U.S. 311, 316 (1972)). Thus, the Commonwealth claims that the regulatory goals in this case necessitate warrantless searches of individual miners. However, the defendant argues that, regardless of the need to search the miners, the regulatory scheme in place at the time of the inspection addressed the safety of the premises and equipment of the mine, not the miners.

The regulations do not expressly authorize inspection or search of the individual miner, but rather, set minimum safety standards with which the mine owner must comply. The Virginia Mine Safety Act (VMSA), as it existed at the time of the search, required that all underground mines be subject to inspection at least every ninety days and specified the conduct of the inspection. *See* Code § 45.1-5. This inspection procedure refers to premises and equipment, not individual miners. Elsewhere in the VMSA, the General Assembly has made it a felony for any "miner, workman, or other person in an underground coal mine [to] smoke or carry or possess any smoker's articles or matches, lighters, or similar materials generally used for igniting smoker's articles," and requires the operator of the mine to display a notice to this effect. Code §§ 45.1-98.1 and 45.1-98.2. This provision does not authorize any "smoker search" program.[1]

Federal law expressly allows an inspection of "all or part of [the] mine" but not the individual miner. 30 U.S.C. § 813(i). Further, 30 U.S.C. § 877(c) requires a mine operator to implement a program to insure that no one enters the underground mines carrying smoker's articles. This section, however, does not require a "smoker search" program, nor expressly authorize searches of miners by anyone.

The regulatory scheme relied upon by the Commonwealth to support the search of these two miners authorizes unannounced and warrantless searches of the mines. It does not, however, authorize such searches of the miners themselves.

## CONSTITUTIONALLY ADEQUATE SUBSTITUTE
## FOR WARRANT

█ In the context of the third requirement, the specific privacy concerns of the Fourth Amendment become most apparent. The mine owner has a diminished expectation of privacy because he or she "cannot help but be aware that he 'will be subject to effective inspection.' " *Dewey*, 452 U.S. at 603. In order to provide an adequate substitute for the warrant requirement, the regulation must

---

[1]  However, the following year, the general assembly repealed and reenacted the VMSA, including this section, amending it to include a requirement that "[t]he operator shall institute a smoker search program, approved by the Chief, to ensure that any person entering the underground area of the mine does not carry smoking materials, matches, or lighters." *Code* § 45.1-161.177(B).

both limit the "time, place, and scope" of the inspection and must put the owner on notice of the possibility and permissible scope of the inspection.[2] *Burger*, 482 U.S. at 702.

The Commonwealth argues that anyone who entered the mines should be aware that he or she is subject to a warrantless search. *See Marshall v. Donofrio*, 465 F. Supp. 838, 842 (E.D. Pa. 1978), *cert. denied*, 444 U.S. 1102 (1980). While the owners and operators of mines should be aware that their mines are subject to inspection, the statutory scheme does not notify the individual miners that they may be subject to search. Thus, the miners' expectation of privacy remains undiminished by the statutes.

The statutory scheme relied upon by the Commonwealth does not put the miners on notice of the likelihood of searches or limit those searches in time, place, and scope. Therefore, it does not provide "a constitutionally adequate substitute for a warrant."

## ANALOGY TO DRUG TESTING CASES

The Commonwealth compares the search of the individual miners and their personal belongings to the drug testing of certain employees. *See National Treasury Employees Union v. Von Raab*, 489 U.S. 656 (1989) (upholding warrantless urine testing where "operational necessities of the workplace" in "certain forms of public employment may diminish privacy expectations even with respect to such personal searches"). *See also Skinner v. Railway Labor Executives Ass'n*, 489 U.S. 602 (1989) (upholding urinalysis and breath tests of railway workers at the workplace because of governmental interest in safety). In those cases, the Supreme Court ruled that while such testing implicates the Fourth Amendment, the governmental objectives and the procedures used were sufficiently strong to eliminate the requirement of warrant, probable cause, or even particularized suspicion for testing.

However, the regulations in those cases are distinguishable from those relied upon by the Commonwealth in this case. In *Von Raab* and *Railway Labor Executives*, the regulations specifically authorized the testing and prescribed the scope and manner of test-

---

[2] The Commonwealth argues that the scope of the search was properly tailored as it was conducted in the underground mine during working hours and was limited to a search for smoker's materials.

ing and the permissible use of the test results, prohibiting their use "in a criminal prosecution of the employee without the employee's consent." *Von Raab*, 489 U.S. at 666. In those cases, the employees were on notice that they would be subject to drug testing and the regulations helped to assure that the intrusions into their privacy were not "the random or arbitrary acts of government agents." *Railway Labor Executives*, 489 U.S. at 621-22. Here, no regulation or statute notified the miners that they might be searched or assured that the searches would not be arbitrary. The rationale underlying *Von Raab* and *Railway Labor Executives* does not support the conclusion that the searches of these miners were not violations of the Fourth Amendment.

For these reasons, we conclude that no statutory or other regulatory scheme authorized searching these miners. Consequently, even though the government has a substantial interest in promoting safety in the mining industry, we hold that the trial court did not err in suppressing the evidence seized during the searches of the miners, and we affirm its order.

*Affirmed.*

Moon, C.J., and Coleman, J., concurred.