TALLMAN v DEPARTMENT OF NATURAL RESOURCES

Docket No. 61683. Submitted October 14, 1982, at Escanaba.—Decided February 9, 1983. Leave to appeal applied for.

Roger and Kirk Tallman, Wayne Seaman and Gerald Casey, commercial fishermen, refused to allow state conservation officers to inspect their fishing vessels in open waters without search warrants. The director of the Department of Natural Resources suspended the fishing licenses of the Tallmans, Seaman and Casey for 60 days. The fishermen filed a petition for review in the Delta Circuit Court. The court, Clair J. Hoehn, J., affirmed the license suspension for Kirk and Roger Tallman but reversed the license suspensions for Seaman and Casey. The Tallmans appealed and the Department of Natural Resources cross-appealed. *Held:*

The circuit court's order was affirmed. The statute authorizing conservation officers to conduct a search of fishing vessels without a warrant must be construed to require exigent circumstances to justify such a search. A commercial fishing license should not be suspended for a licensee's failure to cooperate with attempted unconstitutional inspections. There were no allegations of either probable cause to believe that illegal activity had occurred or exigent circumstances in the *Seaman* and *Casey* cases and their licenses should not have been suspended. There was probable cause to believe that the Tallmans were using illegal trap nets and exigent circumstances existed insofar as incriminating evidence could have been easily slipped into the water. Suspension of the Tallmans' license was permissible.

Affirmed.

M. F. CAVANAGH, J., concurred in the result only.

1. FISH AND FISHERIES — LICENSES.

The director of natural resources may issue commercial fishing licenses containing terms and restrictions necessary in carrying out the commercial fishing law including but not limited to the

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 35 Am Jur 2d, Fish and Game §§ 31, 45.
[2] 35 Am Jur 2d, Fish and Game § 54.

right to inspect the licensee's fishing operations in the waters, on board or ashore (MCL 308.1b[2][e]; MSA 13.1491[2][2][e]).

2. FISH AND FISHERIES — CONSERVATION OFFICERS — SEARCHES.

The statute providing that conservation officers may search boats without a warrant must be construed as requiring the presence of exigent circumstances before conservation officers are authorized to conduct a search without a warrant (MCL 300.12; MSA 13.1222).

3. FISH AND FISHERIES — LICENSES.

A commercial fishing license should not be suspended by reason of a licensee's failure to cooperate with attempted unconstitutional inspections.

*Green, Renner, Weisse, Rettig, Rademacher & Clark* (by *Nino E. Green*), for plaintiff.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, and *Stewart H. Freeman* and *Elizabeth L. Valentine*, Assistants Attorney General, for defendant.

Before: D. F. WALSH, P.J., and ALLEN and M. F. CAVANAGH, JJ.

D. F. WALSH, P.J. Following issuance of defendant Department of Natural Resources's orders directing a 60-day suspension of their commercial fishing licenses, plaintiffs, Roger and Kirk Tallman,[1] Wayne Seaman and Gerald Casey, petitioned for judicial review in circuit court. MCL 24.301 *et seq.;* MSA 3.560(201) *et seq.* The suspensions were based on plaintiffs' refusal to allow inspections without warrants, in open water, of their fishing vessels by state conservation officers. On the authority of *People v Lansing Municipal Judge*, 327 Mich 410; 42 NW2d 120 (1950), and *Dep't of Natural Resources v Seaman*, 396 Mich 299; 240 NW2d 206 (1976), the circuit court ruled

---

[1] Plaintiffs Roger and Kirk Tallman were issued a joint license.

that plaintiffs' vessels were not subject to inspections without warrants absent probable cause and exigent circumstances. Finding probable cause in the case of the Tallmans, the court affirmed suspension of their license. Suspensions of Seaman's and Casey's licenses were, however, overruled. Plaintiffs Tallman appeal; defendant DNR cross-appeals. We affirm.

The commercial fishing license of each of the plaintiffs provides that, by acceptance and utilization of the license, each licensee agrees to conduct his fishing operations in accordance with the provisions of the license. One of those provisions states:

"The director of the Department of Natural Resources or his representative may at any time inspect the vessels, vehicles, books, records, documents or other property used in carrying on the licensee's [or licensees'] fishing operation and business; and further, may inspect and examine any fish in transport or in storage at any warehouse or in any truck, train or other conveyance whether common carrier or not."

The licenses were restricted in this way in accordance with the authority vested in the director of conservation (director of natural resources) under MCL 308.1b(2)(e); MSA 13.1491(2)(2)(e):

"In addition to the requirements of this act and rules promulgated pursuant to this act, the license issued by the director of conservation may contain provisions:

* * *

"(e) Specifying other conditions, terms and restrictions which are deemed to be necessary in carrying out the provisions of this act, including but not limited to the right to inspect the licensee's fishing operations in the waters, on board or ashore."[2]

---

[2] MCL 308.1b(4); MSA 13.1491(2)(4), provides that the director of conservation may suspend or revoke a commercial fishing license

In *Dep't of Natural Resources v Seaman, supra,* the Supreme Court defined the constitutional limitations on official inspections of commercial fishing vessels without warrants. The Court held that the searches of the defendants' vessel without warrants constituted an unreasonable search in violation of the Fourth Amendment to the United States Constitution and article 1, § 11, of the Michigan Constitution. MCL 300.12; MSA 13.1222 specifically authorizes conservation officers to search commercial fishing vessels without a warrant if they have probable cause to believe that conservation laws are being violated. To save the statute from invalidation on constitutional grounds, the Court construed it to require the presence of exigent circumstances. *Dep't of Natural Resources v Seaman, supra,* pp 314-315. The Court apparently attached no significance to the fact that the defendants' license was subject to 1970-1971 AACS, R 299.889, which provided:

"Rule 9. (1) The director of the department of natural resources or his representatives may inspect a licensee's fishing operations in the waters, on board or ashore.

"(2) If, upon inspection, the catch of protected species is deemed to be excessive, the director many *[sic]* cause the nets to be moved or removed, or close an area to commercial fishing.

"(3) The right to inspect a licensee's fishing operations shall include, but not be limited to, review of records, sales receipts and other documents pertinent to the operation." See *Seaman, supra,* p 320.

On the authority of this binding precedent, we affirm the circuit court's ruling that probable cause and exigent circumstances must accompany

whenever a licensee fails to fulfill or violates any of the conditions, terms or restrictions of the license.

inspections without warrants or, as in this case, attempted inspections without warrants, of commercial fishing vessels. The decision in *DNR v Seaman, supra,* clearly sets forth the constitutional parameters of inspections of commercial fishing vessels. To the extent that licenses and regulations permit such inspections without warrants and without probable cause and exigent circumstances, they are invalid. Commercial fishing licenses cannot be suspended by reason of the licensees' failure to cooperate with attempted unconstitutional inspections.

We also affirm the circuit court's findings of fact. There has been no allegation of either probable cause or exigent circumstances in the cases of plaintiffs Seaman and Casey. Their licenses, therefore, may not be suspended. There was, however, probable cause to believe that the Tallmans were using illegal trap nets. Conservation officers saw trap nets lying on the deck of the Tallmans' vessel. Exigent circumstances existed insofar as incriminating evidence could have been easily slipped into the water as the boat proceeded to port. Suspension of the Tallmans' license was, therefore, permissible.

Although we affirm the circuit court in this case, we note that the law in Michigan, as established in *DNR v Seaman, supra,* is contrary to that in several other jurisdictions.

In *United States v Biswell,* 406 US 311; 92 S Ct 1593; 32 L Ed 2d 87 (1972), and *Colonnade Catering Corp v United States,* 397 US 72; 90 S Ct 774; 25 L Ed 2d 60 (1970), the Supreme Court discussed regulatory searches of commercial property and recognized a limited exception to the warrant requirement. The *Colonnade-Biswell* exception applies to industries where:

"if the law is to be properly enforced and inspection made effective, inspections without warrant must be deemed reasonable official conduct under the Fourth Amendment. * * * [I]f inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context, the prerequisite of a warrant could easily frustrate inspection; and if the necessary flexibility as to time, scope, and frequency is to be preserved, the protections afforded by a warrant would be negligible." *United States v Biswell,* 406 US 316.

The Supreme Court recently discussed the. *Colonnade-Biswell* exception:

"The Secretary urges that an exception from the search warrant requirement has been recognized for 'pervasively regulated business[es],' *United States v Biswell,* 406 US 311, 316; 92 S Ct 1593, 1596; 32 L Ed 2d 87 (1972), and for 'closely regulated' industries 'long subject to close supervision and inspection.' *Collonade Catering Corp v United States,* 397 US 72, 74, 77; 90 S Ct 774, 777; 25 L Ed' 2d 60 (1970). These cases are indeed exceptions, but they represent responses to relatively unique circumstances. Certain industries have such a history of government oversight that no reasonable expectation of privacy, see *Katz v United States,* 389 US 347, 351-352; 88 S Ct 507, 511; 19 L Ed 2d 576 (1967), could exist for a proprietor over the stock of such an enterprise. Liquor *(Colonnade)* and firearms *(Biswell)* are industries of this type; when an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to a full arsenal of governmental regulation.
"Industries such as these fall within the 'certain carefully defined classes of cases,' referenced in *Camara [v Municipal Court,* 387 US 523, 528; 87 S Ct 1727; 18 L Ed 2d 930 (1967)]. The element that distinguishes these enterprises from ordinary businesses is a long tradition of close government supervision, of which any person who chooses to enter such a business must already be aware. 'A central difference between those cases *[Colon-*

*nade* and *Biswell]* and this one is that businessmen engaged in such federally licensed and regulated enterprises accept the burdens as well as the benefits of their trade, whereas the petitioner here was not engaged in any regulated or licensed business. The businessman in a regulated industry in effect consents to the restrictions placed upon him.' *Almeida-Sanchez v United States,* 413 US 266, 271; 93 S Ct 2535, 2538; 37 L Ed 2d 596 (1973)." *Marshall v Barlow's, Inc,* 436 US 307, 313; 98 S Ct 1816, 1820-1821; 56 L Ed 2d 305 (1978). See also *Donovan v Dewey,* 452 US 594; 101 S Ct 2534; 69 L Ed 2d 262 (1981).

Applying the *Colonnade-Biswell* exception, the Wisconsin Court of Appeals recently ruled that a statute authorizing inspections without warrants of commercial fishing vessels was constitutional. *State v Erickson,* 101 Wis 2d 224; 303 NW2d 850 (1981). The Court observed that Wisconsin's fishing industry had a history of pervasive state regulation and that the industry affected an important government interest: the preservation of a natural resource of the state. The Court further reasoned that a warrant requirement would substantially impair the state's enforcement of laws enacted to further that vital interest and that, since commercial fishing licenses were expressly conditioned on a grant by the licensees of inspection rights to the state, licensees effectively consented to spot inspections by state officials and had no expectation of privacy.

Other courts have also applied the *Colonnade-Biswell* exception in the context of commercial fishing. See, *e.g., State v Westside Fish Co,* 31 Or App 299; 570 P2d 401 (1977); *State v Mach,* 23 Wash App 113; 594 P2d 1361 (1979); *State v Marconi,* 113 NH 426; 309 A2d 505 (1973); *United States v Raub,* 637 F2d 1205 (CA 9, 1980), *cert den* 449 US 922; 101 S Ct 322; 66 L Ed 2d 150 (1980);

*United States v Tsuda Maru,* 470 F Supp 1223 (D Alas, 1979); *United States v Kaiyo Maru No 53,* 503 F Supp 1075 (D Alas, 1980).

We invite the Michigan Supreme Court to re-examine its decision in *DNR v Seaman, supra.* That Michigan's commercial fishing industry is pervasively regulated cannot be gainsaid. MCL 308.1 *et seq.;* MSA 13.1491 *et seq.* The Legislature has declared that all fish in Michigan waters of the Great Lakes are property of the state and that the taking thereof is a privilege. MCL 308.1; MSA 13.1491. In our judgment, there is not necessarily any constitutional infirmity in inspections without warrants, without probable cause and exigent circumstances, of the vessels of individuals who, pursuant to Michigan's comprehensive regulatory scheme, are granted licenses to take for their own profit an important, protected natural resource of the state.

We must, however, affirm the trial court in all respects. No costs, a public question.

M. F. CAVANAGH, J., concurs in the result only.