

**FILED**

October 26, 2021 01:07 PM

SX-2019-CR-00069

TAMARA CHARLES
CLERK OF THE COURT

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS

## DIVISION OF ST. CROIX

| | |
|---|---|
| PEOPLE OF THE VIRGIN ISLANDS | Criminal No. SX-19-CR-69 |
| Plaintiff, | Charge(s): |
| v. | Unauthorized Possession of a Firearm By Felon 14 V.I.C. § 2253(a) |
| KAREEM B. SMITH | Unauthorized Possession of a Firearm in a Vehicle 14 V.I.C. § 2253(e) |
| Defendant. | Possession of Ammunition 14 V.I.C. § 2256(a) |
| | Possession of a Controlled Substance with Intent to Distribute 19 V.I.C. § 604(a)(1) |

### Cite as: 2021 VI Super 105U

**Attorney Amelia B. Joseph, Esq.,**
**Office of the Territorial Public Defender**
#1-B Clifton Hill 2nd Floor
Christiansted, St. Croix
U.S. Virgin Islands 00822

**Attorney Amie Simpson, Esq.**
Assistant Attorney General
V.I. Department of Justice
#213 Estate La Reine
#6151 RR1 St. Croix U.S.V.I. 00850
Virgin Islands 00820

## MEMORANDUM OPINION ORDER

**Jomo Meade, Judge**

¶ 1.　　**THIS MATTER** is before the Court on Defendant's Motion to Suppress evidence recovered by law enforcement officers after he was stopped for administrative inspection of the vehicle he was operating, and his

person and personal effects were seized and searched. For reasons set forth below, the Motion to Suppress is **GRANTED**.

## FACTUAL BACKGROUND

¶ 2.    Defendant, Kareem Smith, operates a commercial vehicle as an employee of Marco St. Croix Inc., a Virgin Islands commercial enterprise. On April 10, 2019, he was driving his employer's Mack truck on Manning Bay Road in the vicinity of the Henry Rohlsen Airport. At the same time, Motor Carrier Safety Coordinator, Charles Moorhead in the company of Sgt. Alexander Moorhead and Sgt. Samantha Smith, officers of the Virgin Islands Police Department ("VIPD") were conducting motor carrier safety inspections in the area. The officers commanded the Defendant to pull the truck over to the side of the road to the inspection area. He complied. Motor Carrier Coordinator Charles Moorhead and Sgt. Alexander Moorhead approached the vehicle.

¶ 3.    The sequence of events immediately following the stop of the truck is unclear because the testimony of the witnesses exhibits sharp disputes and contradictions. Charles Moorhead testified that he approached the truck, introduced himself and informed the Defendant of the kind inspection they were about to conduct. During the introduction, Sgt. Alexander Moorhead stopped Mr. Charles Moorhead from assisting in the inspection, took him aside and instructed Mr. Charles Moorhead to "stand by and watch" while Sgt. Moorhead "showed him the ropes" in conducting

2

inspections. Charles Moorhead stood back and observed while Sgt. Moorhead interacted with the Defendant. Some moments later, Sgt. Moorhead came back to inform Charles Moorhead that he smelled marijuana and returned to continue the interaction with the Defendant.

¶ 4. Sgt. Moorhead testified that he pulled the truck over and directed the driver to take the vehicle to the inspection site where Mr. Charles Moorhead was conducting the inspections. Sgt. Moorhead went to assist Charles Moorhead with the inspection. It was upon observing the interaction between the Defendant and Mr. Charles Moorhead that Sgt. Moorhead detected the odor of marijuana, at which time he took over the inspection. Sgt. Moorhead went on to ask the Defendant whether the Defendant had any marijuana and the Defendant stated he had a joint. Sgt. Moorhead asked the Defendant to retrieve the joint and after some delay the Defendant retrieved a backpack from the cabin of the truck. Sgt. Moorhead directed the Defendant to open the backpack and place its contents on the fender of the truck. A sum of U.S. currency and marijuana contained within a zip-loc bag that was wrapped in a shopping bag were among the items removed from the backpack.

¶ 5. The Defendant testified that Sgt. Moorhead flagged him down and instructed him to pull the truck to the side of the road. When Defendant brought the truck to a stop, Sgt. Moorhead approached and asked the defendant to produce his license, registration and insurance which the Defendant provided. Charles Moorhead then instructed the Defendant to

operate some of the truck's utility instruments including the wipers, lights, indicators and horn. After Defendant shut off the truck, he noticed that Sgt. Moorhead whispered something to Charles Moorhead. Subsequently, Sgt. Moorhead returned to the truck and ordered the Defendant out of the truck to which the Defendant protested. Sgt. Moorhead then asked if he had any drugs or anything in the truck to which the Defendant answered, "No". Sgt. Moorhead then instructed the Defendant to come out of the truck and bring anything that he has in the truck. The Defendant came out of the truck and brought his backpack. Sgt. Moorhead instructed the Defendant to place the items from the backpack on the fender of the truck and empty his pockets. The Defendant complied. Sgt. Moorhead then frisked the Defendant after asking the Defendant whether he had moved all items from his pockets.

¶ 6.    The events which transpired subsequent to the seizure and search of the backpack appear to be less in dispute. Sgt. Moorhead instructed the Defendant to call his employer. The Defendant got on the phone and was pacing back and forth. Sgt. Moorhead then instructed the Defendant observe him count the money retrieved from the Defendant's backpack but the Defendant appeared to ignore this directive as the Defendant continued to pace back and forth. The officers, interpreting the Defendant's pacing as his preparation to flee the scene, physically restrained the Defendant, either to stop him from pacing back and forth or to arrest him for the possession of the marijuana that was found in his backpack. In the

4

process of physically restraining the Defendant, Sgt. Moorhead did something that he called, "taking Mr. Smith down to the ground" and putting his body weight on the Defendant until Sgt. Samantha Smith could complete the process by putting handcuffs on the Defendant. When this physical altercation ended the officers saw a firearm on the ground.

¶ 7.  The Defendant was charged with Possession of a Firearm and Possession of a controlled substance with intent to distribute.

## THE LEGAL STANDARD

¶ 8.  The Fourth Amendment's prohibition against unreasonable searches and seizures applies to administrative inspections of commercial property as well private homes. *See v. City of Seattle*, 387 U.S. 541, 543(1967). However, an exception to the probable cause and warrant requirement has been carved out for administrative inspection of "closely regulated" industries. *Donovan v. Dewey*, 452 U.S. 594, 602 (1981). A closely regulated industry is one that has a long history of government oversight. New York v. Burger, 482 U.S. 691, 699 (1987). The owner of a business has an expectation of privacy in commercial property which society is prepared to consider reasonable. *Katz v. United States*, 389 U.S.347, 361(1967). This expectation of privacy exists not only with respect to traditional searches conducted for gathering criminal evidence but also with respect to administrative inspections designed to enforce regulatory statutes. *Marshall v. Barlow's Inc.*, 436 U.S.307, 312-313(1978). Regulatory schemes are allowed an exemption from the probable cause and

5

warrant requirement in the inspection of commercial property on the premise that the owner of commercial property has a lesser expectation of privacy than a homeowner and the government has a heightened interest in regulating the property. *Burger* at 699. The exemption from the need for probable cause and the warrant which is accorded to searches made for the purpose of administrative regulation is not accorded to searches that are not made for those purposes. *Whren v. United States*, 517 U.S. 806, 811-812 (1996). (*citing New York v. Burger*, 482 U.S.691, 702(1987) and *Colorado v. Bertine*, 479 U.S. 367, 371(1987)).

## ANALYSIS

### A. Administrative Stop and Inspection of the Truck

¶ 9.      When law enforcement officers, Alexander Moorhead and Samantha Smith and motor carrier safety coordinator, Charles Moorhead ordered the Defendant, Kareem Smith to bring the vehicle he was operating to a stop for a roadside inspection, the actions of the officers constituted a seizure for purposes of the Fourth Amendment. See *Florida v. Royer*, 460 U.S. 491, 502 (1983) (finding that a person has been seized when circumstances surrounding his encounter with law enforcement authority would lead a reasonable person to believe that he is not free to leave). The people argue that this seizure was lawful because pursuant to 20 V.I.C. §§ 900-902 and 49 CFR §§ 300-399, the officers are authorized to stop and inspect commercial vehicles at any time. But the fact that the Virgin Islands

6

Legislature has enacted statutory provisions which permit warrantless administrative inspection of commercial property does not mean that officers have unbridled discretion to seize and inspect commercial property at any time. The U.S. Supreme Court has found that that the owner of commercial property has a reasonable expectation of privacy, even though there is a lesser expectation of privacy in commercial property than in the home. *Donovan* v. *Dewey*, 452 U.S. 594, 598-99(1981); *See v. City of Seattle* at 543. Accordingly, regulatory schemes must be tailored in observance of the Fourth Amendment's protection of that right. *Burger* at 702-703. In *Burger*, the Court went to great lengths to show that not all commercial activity subject to governmental regulation qualify as closely regulated industries. The search in Burger involved the search and inspection of an automobile junkyard. The Court stated that although the automobile industry had been regulated for 140 years it did not qualify as a closely regulated industry. However, the Court stated that this was not so much about automobiles but about junk and the junk business qualified as a closely regulated industry because of its long history of government oversight. Although the right to privacy in commercial property is most attenuated in "closely regulated" industries where there is the least expectation of privacy, a statute's inspection program and regulatory scheme must provide adequate standards and safeguards to satisfy constitutional requirements. *Id.* Even in the context of a closely regulated business, warrantless inspection will be deemed to be reasonable only so long as three

7

criteria are met. First, there must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made. Second, the warrantless inspections must be necessary to further the regulatory scheme. Third, the statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant. *Donovan v. Dewey*, 452 U.S. at 600-602. To satisfy this standard, the regulatory scheme must advise the owner of commercial property that the inspection or search is being made pursuant to the law. *Marshall v. Barlow's, Inc.*, 436 U.S. at 323. The statute must be sufficiently comprehensive and defined that the owner of commercial property cannot help but to be aware that his property will be subject to periodic inspection undertaken for a specific purpose. *Donovan v. Dewey* at 600. The regulatory scheme must be carefully limited in time, place and scope so as to limit the discretion of inspectors. *United States v. Biswell*, 406 U.S. 311, 315 (1972).

¶ 10.    Title 20 V.I.C. § 901 identifies the personnel who are authorized to perform inspections of commercial motor vehicles, drivers and motor carriers for compliance with safety regulations. However, there is nothing in this provision which state how these inspections are to be performed. Section 900 adopted selected parts of the Code of Federal Regulations and explicitly states that vehicles below the weight rating of 26,001 pounds are exempt from regulation except for vehicles carrying hazardous materials or vehicles used to transport 16 or more persons including the driver. The

8

People did not identify any specific provisions of the statute or the selected provisions of the Code of Federal Regulations to support their position that the officers are authorized to stop any commercial vehicle at any time. Neither did the People present evidence of the regulatory system by which the administrative inspections of commercial vehicles in the Virgin Islands are to be performed. Where Congress has authorized inspection but made no rules governing the procedures that inspectors must follow, the Fourth Amendment and its various restrictive rules apply. *Colonnade Corp. v. United States*, 397 U.S. 72, 77 (1970). In such cases, a warrant may be necessary to protect the owner from the "unbridled discretion of executive and administrative officers," *Marshall v. Barlow's, Inc.*, at 323. Warrantless inspections of commercial property may be constitutionally objectionable if their occurrence is so random, infrequent, or unpredictable that the owner, for all practical purposes, has no real expectation that his property, will from time to time, be inspected by government officials. *Id.* The established law does not support the People's position which tend to suggest that the officers can arbitrarily stop and inspect commercial vehicles simply because they are commercial vehicles. Moreover, the People did not present any evidence of the rules of a regulatory scheme by which this Court could determine whether the stop of the truck was constitutionally permissible. The People did not meet their burden to establish that the stop of the truck was reasonable.

## B. Seizure and Search of the Defendant's Person and Personal Effects

¶ 11.     The criminal charges in this case do not arise out of evidence of criminal conduct discovered incidental to a regulatory inspection of commercial property, but out of a seizure and search of the Defendant's person and personal effects. Even though a statutory scheme provides for a search of a closely regulated industry without probable cause or warrant requirement, this permission to search does automatically extend to people engaged in the industry. *Shoemaker v. Handel*, 795 F.2d. 1136, 1142 (3rd Cir. 1986). It follows that even if the stop of the Mack truck in this case were constitutionally permissible under an administrative regulatory scheme, the officers would need an independent basis of probable cause to arrest and search the Defendant. The People contend that Sgt. Moorhead had probable cause to inquire into the possession of marijuana. First, because he had authority to stop the truck for an administrative inspection, and the provisions of the Code of Federal Regulation which authorizes the inspection prohibit the possession of marijuana in the cabin of a commercial vehicle. Second, the People contend that Sgt. Moorhead had probable cause to search the truck when he detected the odor of marijuana as he approached the truck at the driver's side door. Neither of these contentions support a lawful basis of probable cause.

¶ 12.     An administrative inspection is the inspection of business premises or commercial property conducted by authorities responsible for enforcing

10

a pervasive regulatory scheme. *Donovan v. Dewey*, at 599. (*Dewey* involved the unannounced inspection of a mine for compliance with health and safety standards). A statute authorizing a search which can uncover no administrative violations is not sufficiently limited in scope to avoid the warrant requirement. *Burger*, at. 723. An inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence *Florida* v. *Wells*, 495 U.S. 1, 4, (1990). The constitutional validity of a warrantless inspection of commercial property would only be upheld if the inspection does not appear to be a pretext for obtaining evidence of the violation of penal laws. *Burger* at 716-717. It would appear that in order to satisfy constitutional sufficiency, statutory regulatory schemes must be confined to the administrative purpose that they are meant to fulfill. The government may not use an administrative inspection scheme to search for criminal violations. *Michigan v. Clifford*, 464 U.S. 287, 292 (1984). *Title 20 V.I.C. § 901* authorizes agents of the government to inspect commercial vehicles for compliance with safety regulation. It is evident that if the regulatory scheme under this provision gave Sgt. Moorhead or any other agent of the government the authority to inquire into or search for evidence of criminal conduct as part of the regulatory scheme it would be offensive to the Fourth Amendment. Clearly, no lawful basis of probable cause to search for criminal violation may be lawfully crafted out of an administrative regulatory scheme.

11

¶ 13.     Sgt. Moorhead testified that when he detected the odor of marijuana, he had a conversation with the Defendant about the possession of mariju-ana inside a commercial vehicle at which point the Defendant told the officer that the Defendant had a joint. Sgt. Moorhead further stated that he requested that the Defendant retrieve the item that would be the joint. After some delay, the Defendant eventually brought a backpack out of the cabin of the truck. Sgt. Moorhead commanded the Defendant to remove the items from the backpack and place them on the fender of the truck. The items included marijuana and a sum of money. The marijuana was inside a zip-loc bag that was wrapped inside a shopping bag.

¶ 14.     While Sgt. Moorhead testified that his training and experience ena-bles him to detect the smell of marijuana, the People provided no evidence that Sgt. Moorhead has had any specialized form of training or natural attributes which would enable him, while standing outside the cab of a truck, to smell marijuana that was inside a zip-loc bag, wrapped in a shop-ping bag, placed inside a backpack that was in the cabin of the truck. Moreover, it is quite interesting that Coordinator, Charles Moorhead, who testified that he was first to approach the truck and was talking to the Defendant through the open window of the cabin, also testified that the did not detect the smell of marijuana. Granted, the training, experience and natural attributes of coordinator Charles Moorhead and Sgt. Moor-head may be significantly different. However, this Court, as the trier of fact, does not find the testimony regarding the smell of marijuana to be

12

credible. Accordingly, the smell of marijuana which the People claim as the basis of probable cause, appears to be a pretext to conduct a search that was beyond the scope of an administrative regulatory inspection. Therefore, even if the stop of the truck was lawful, the search and seizure of the Defendant and his personal effects extended beyond the initial purpose of the stop. The exemption from the probable cause and warrant requirement for administrative inspections do not apply to searches that go beyond the scope of administrative inspections. *Colorado v. Bertine*, 479 U.S. 367, 371-72 (1987). The People have not met their burden to show that Sgt. Moorhead had an independent basis of probable cause to seize and search the Defendant and his personal effects.

¶ 15.    The seizure and search of the backpack and the arrest of the Defendant based on the evidence taken from the backpack constitute and unlawful search and seizure in violation of the Fourth Amendment. An arrest or search without probable cause constitutes an illegal government activity. *Harris v. New York*, 495 U.S. 14, 19 (1990). Search and seizure by way of illegal government activity is an unreasonable intrusion upon the expectations of privacy. The Fourth Amendment protects people from the unreasonable government intrusion into their legitimate expectations of privacy. The warrant and probable cause requirement make significant contributions to that protection. *United States v. Chadwick*, 433 U.S. 1, 7 (1977). The seizure of a person must be supported by probable cause. *Michigan v. Summers*, 452 U.S. 692, 696 (1981). Every arrest and every

13

seizure having the essential attribute of a formal arrest is unreasonable unless it is supported by probable cause. Id at 700. Evidence obtained as a result of a Fourth Amendment violation must be suppressed as the fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963)

## CONCLUSION

¶ 16.    The reasonableness of Sgt. Moorhead's actions is dependent on whether he had probable cause to believe that evidence of criminal conduct was contained within the backpack that the Defendant had in his possession inside the truck. It was a seizure that is woefully lacking in evidence to establish probable cause. All evidence obtained as a result of the arrest of the Defendant and the search of his person and personal effects are hereby Suppressed. The Motion to Suppress is **GRANTED**.

**DONE AND SO ORDERED** this **26ᵗʰ** day of October, 2021.

HONORABLE JOMO MEADE
Judge of the Superior Court

ATTEST

**TAMARA CHARLES**
Clerk of the Court
By: _____
Deputy Clerk

Dated: __10/29/2021__

14